# DECISIONS

# Supreme Court of Florida

## JUNE TERM, 1908

JANUARY ADAMS, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *Defendant in Error*.

1. The rule prevailing here in granting continuances in criminal cases is the same as the one that obtains in civil cases, except that in criminal cases the grounds for the motion should be scanned more closely than in civil cases, on account of the superior temptation to delay.

2. An application for a continuance of a cause is addressed to the sound discretion of the court, and the action of the trial court thereon will not be reversed unless there has been a palpable abuse of that discretion to the injury of the accused.

3. All facts necessary to show a clear abuse of the discretion of the court in ruling upon an application for the continuance of a cause to the injury of the defendant must be presented, and, whenever the record is either silent or uncertain on any point material to establish an abuse of such discretion, the presumptions are all in favor of the correctness of the ruling.

4. An affidavit filed in support of a motion for the continuance of a cause is fatally defective when it fails to state, (1) that the applicant expects to procure said testimony at the next term, or (2) that the absent witness resides in the county where the suit is pending, or if out of the county good cause is not shown for taking his deposition, or (3) that the application is not made for delay only, or (4) that the absent witness has been duly served with a subpoena, or a satisfactory reason assigned for the omission.

5. Where there is evidence from which all the elements of the crime of which the defendant stands convicted may be legally inferred and it does not appear that the jury were not governed by the evidence adduced at the trial, the appellate court will not disturb the verdict.

6. The defendant having been convicted of murder in the second degree stood acquitted of the crime of murder in the first degree charged against him. Thereafter he could only to put upon trial for the crime of murder in the second degree; and, this not being a capital crime, he should be tried by a jury of six men.

7. The evidence examined and found to be sufficient to support a verdict of guilty of murder in the second degree.

This case was decided by the court En Banc.

Writ of Error to the Circuit Court for Hernando County.

The facts in the case are stated in the opinion of the court.

*Davant & Davant,* for plaintiff in error;

*W. H. Ellis,* Attorney General, for the State.

PARKHILL, J.—This is the second appearance of this case in this court. The first report of it will be found in 55 Fla. 1, 46 South. Rep. 152.

The plaintiff in error was indicted, at the fall term, 1907, of the circuit court for Hernando county, for the murder of one George Green, and upon trial was convicted of murder in the second degree and sentenced to the state prison for the term of his natural life. This judgment and sentence was reversed in this court on the

24th day of March, 1908, and the defendant was convicted a second time of murder in the second degree and again sentenced to the state prison for life. From this last sentence he seeks relief by writ of error.

The first assignment of error is based upon the refusal of the trial court to grant a motion made by defendant for a continuance of this cause because of the absence of one Joe Ruth.

In support of the motion for a continuance, the defendant filed the following affidavit: "Now comes the defendant, January Adams, and being by me duly sworn, on his oath says that one Joe Ruth is a necessary and material witness on his behalf, and that he cannot safely go to trial without the said witness; that from an affidavit heretofore filed in the said case by one H. F. Price, it appears that the said Ruth was an eye witness of the shooting in which George Green lost his life, and will testify that at the time the said George Green was killed by said defendant, the said George Green was attempting to take the life of the said defendant with a single barrel shot gun, which the said Green was at that time pointing at said defendant. Deponent further says that he has had subpoena issued for the said witness and that same has been placed in the hands of the sheriff for service. Deponent further says that he cannot safely go to trial without the said witness, but that the same is necessary to his defense, and that the said witness is absent without the consent, procurement or connivance of the said defendant, either directly or indirectly given.

his<br>JANUARY ADAMS<br>mark.

Sworn to and subscribed before me this twenty-ninth day of April, A. D. 1908.        FRANK E. SAXON,
    (Seal)                Clerk Circuit Court."

When this case was here before, it was reversed because we thought that in view of the unsatisfactory character of the evidence upon which the verdict was rendered and of the offer of the newly discovered evidence of this same Joe Ruth, the motion for a new trial should have been granted. Now we are asked to say that the court erred in a refusal to grant a continuance of the case because of the absence of Joe Ruth.

The rule in granting continuances in civil cases has been stated by this court to be as follows: "When a party applies in a civil suit for a continuance for the term on the ground of the absence of a witness, it must be shown by affidavit that the witness has been duly served with a subpoena, or a satisfactory reason assigned for the omission; that he is absent without the consent of the party, directly or indirectly given; that he resides in the county where the suit is pending, or if out of the county, good cause must be shown for not taking his deposition; that the testimony is material; that the applicant expects to procure said testimony at the next term; that the application is not made for delay only; that he cannot safely proceed to trial without the evidence of said witness; and the party must further state the facts expected to be proved by said witness." Harrell v. Durrance, 9 Fla. 490; Gladden v. State, 12 Fla. 562.

The rule prevailing here in granting continuances in criminal cases is the same as the one that obtains in civil cases, except that in criminal cases the grounds for the motion should be scanned more closely than in civil cases, on account of the superior temptation to delay. Gladden v. State, *supra;* Bryant v. State, 34 Fla. 291, 16 South. Rep. 177; Bynum v. State, 46 Fla. 142, 35 South. Rep. 65; Ballard v. State, 31 Fla. 266, 12 South. Rep. 865.

An application for a continuance of a cause is addressed to the sound discretion of the court, and the

action of the trial court thereon will not be reversed unless there has been a palpable abuse of that discretion to the injury of the accused. All facts necessary to show a clear abuse of discretion in this regard to the injury of the defendant must be presented, and whenever the record is either silent or uncertain on any point material to establish such an abuse of discretion, the presumptions are all in favor of the correctness of the ruling. Gass v. State, 44 Fla. 70, 32 South. Rep. 109; Hall v. State, 35 Fla. 534, 17 South. Rep. 638; Hicks v. State, 25 Fla. 535, 6 South. Rep. 441; Ballard v. State, *supra*.

Considering the application for a continuance herein in the light of these principles of the law, we find it to be fatally defective and the same was properly denied.

The affidavit filed in support of the motion for continuance fails to state "that the applicant expects to procure said testimony at the next term." In Easterlin v. State, 43 Fla. 565, 31 South. Rep. 350, we declined to adjudge erroneous the refusal of an application for continuance because of the absence of a witness when the affidavit filed in support thereof omitted to state "that the applicant expects to procure said testimony at the next term."

The affidavit filed herein is fatally defective by reason of another omission. It fails to state that the absent witness resides in the county where the suit is pending, or if out of the county good cause is not shown for taking his deposition. An allegation of this kind has been held to be essential. Webster v. State, 47 Fla. 108, 36 South. Rep. 584.

The affidavit is fatally defective for the further reason that it does not show that the witness has been duly served with a subpoena, or a satisfactory reason assigned for the omission. Gladden v. State, *supra*.

This affidavit is fatally defective for the further rea-

son that it does not show "that the application is not made for delay only." All that the affidavit shows may be true, and yet if the applicant did not expect to procure the testimony of the absent witness at the next term of the court, and if the application for continuance was made for delay only, the court very properly denied the said application. If we proceed according to the rule that "all facts necessary to show a clear abuse of discretion in this regard to the injury of the defendant must be presented, and whenever the record is either silent or uncertain on any point material to establish such an abuse of discretion the presumptions are all in favor of the ruling," we must presume that the application for a continuance was made for delay only and that the applicant did not expect to procure said testimony at the next term, for the record is silent on these particulars, and it 's the duty of the defendant to show by affidavit that the application is not made for delay only and that he expects to procure said testimony at the next term.

When this case was reversed here and sent back to the court below for a new trial, it did not become the duty of that court of its own motion to grant the defendant a continuance because of the absence of Joe Ruth. If the defendant did not desire a continuance of his case, he was not compelled to have it because of the action of this court reversing the judgment of his first conviction. If the defendant desired a continuance of his case, it was his duty to ask for it, and the court was not required to grant a continuance unless the defendant made an application therefor in accordance with law.

The first thing that an affidavit for a continuance must show is, "that the witness has been duly *served* with a subpoena, or a satisfactory reason assigned for the omission." The defendant is not required to show by affidavit that a subpoena has issued and been placed in

the hands of the sheriff, but the affidavit must show that the witness has been duly *served* with a subpoena, or a satisfactory reason assigned for the omission. The defendant's affidavit only shows "that he has had a subpoena issued for the said witness and that same has been placed in the hands of the sheriff for service." From the evidence introduced in behalf of the motion, it appears that a subpoena for Joe Ruth issued on the 16th day of April, 1908, and another subpoena for the same witness issued on the 27th day of April, 1908. In the record proper appears the return of the sheriff on the first subpoena, as follows: "Received this subpoena April 16th, 1908, and have not been able to get service on this witness for the reason that he is not within the county of Hernando and that he was informed that the witness's family was at Crystal River in Citrus county and that I did just after the last term of the court in Nov. send a warrant to the Sheriff of Citrus county to be executed but that he has been unable to get the man, the warrant having been returned by the sheriff of Citrus county. After diligent enquiry and search I have been unable to find the said witness. W. E. Law, Sheriff."

If we may consider the return of the sheriff as it appears in the record proper, no showing has been made for the continuance of this case, and if we may not consider what appears in the record proper, then the only showing made by the defendant on this point is that he has had subpoena issued for the witness and placed the same in the hands of the sheriff for service. So here was the trial court asked to continue this case by the defendant upon this weak and improper showing. It will not do to say that but two days after the issuance of the second subpoena without any return by the sheriff upon this last subpoena, and in the absence of such newly discovered witness, and notwithstanding the application for contin-

uance by the defendant on the ground of the absence of such witness, the defendant was hurried into trial, because we cannot say the judge erred in refusing to grant a continuance on such an affidavit as was presented to him—an affidavit that shows the defendant could not or would not say his application was not made for delay only—an affidavit that shows the defendant could not or would not say he expected to procure the testimony of the witness at the next term—an affidavit that fails to show that the witness resided in the county where the trial was had, or if out of the county good cause is not shown for taking his deposition—an affidavit that shows merely that subpoena had issued for the witness. If the return of the sheriff upon the subpoena ought to have been exhibited, it was the duty of the defendant to have shown this. If he failed in this regard it is his fault, and the court cannot be condemned for hurrying the defendant into a trial without the sheriff's return. It is the duty of the defendant to make any error of the trial court appear to this court. We have so often declared our views upon this matter. All facts necessary to show a clear abuse of the discretion of the court in this regard must be presented by the defendant. If they are not presented, the court cannot be blamed and his action set aside, unless we are prepared to set aside and disregard many previous decisions of this court holding that when ever the record is either silent or uncertain on any point material to establish such an abuse of discretion the presumptions are all in favor of the correctness of the court's ruling. See Clements v. State, 51 Fla. 6, 40 South. Rep. 432, and many cases there cited.

The other assignment of error is based upon the court's overruling the motion for a new trial. Under this assignment it is contended that the verdict is contrary to the evidence and the law.

When this case was here before, the evidence considered by us was circumstantial in its nature. No witness in the first trial of this case testified that he saw the shooting. Upon the second trial an eye witness to the shooting, Robert Robinson, was produced and testified for the State.

The evidence of the witnesses for the State as shown now by the bill of exceptions in this case proves or tends to prove the following facts: George Green was killed by the defendant, January Adams. The killing was unlawful, because according to the witness Robinson, Green was not armed at the time of the difficulty and was not making any attempt or demonstration to harm or assault Adams. The killing took place near Herbert Pugh's house. Earlier in the night, *about an hour before the killing,* Adams, Dan Pedee, Neil Belcher, Prince Williams and Herbert Pugh were in the latter's house, when Green came in and asked Dan for a quarter that he had borrowed from Green. Dan did not have a quarter, and Adams said: "Here is a quarter, give it to him and let him go." That made Green mad. He had a gun and some one pushed him out of the house and shut the door. Green remained outside and cursed Adams. According to the witness Jim King, January Adams said when George Green cursed him, "If you cuss me I will split you open." After awhile Green went away. Adams and Pedee started to go out of the house, Adams saying, "I am going out." Some one said, "January, don't go out," but he said, "I am going out." Adams and Pedee went out and remained out about half an hour. They came back into the house and January was in the house a good little while, and after awhile he said, "I am going out," and some said, "January, don't go out," and he said, "I am going out." "January took his pistol out when he went out." "And just about the time he got out on the

outside some one slammed the door to, and just then the shooting commenced. It seemed to me like three or four shots were fired." The witness Robinson said he saw Green and Joe Ruth standing at Pugh's gate just before the shooting. He said: "They were at Pugh's gate. When they come up there in front of his gate he whistled—Joe Ruth whistled—and by that time his door opened and January Adams come out and shot three times and George fell and he fell to the ground when he was shot. George went off towards the still towards the old——— George Green did. He got up again. George did not have a pistol." Question. "Wasn't armed at all?" Answer. "No sir." "January went around the chimney to the end of the house. Joe Ruth went off that way. I have not seen Joe Ruth since that time. That is all that occurred there. I didn't hear anything else. Nobody said anything on that occasion. I leave right off. I was about ten steps from the shooting. None of these people said a word. Joe didn't say anything, only whistled. Green didn't say anything. January didn't say anything * * * I didn't know what time it was. It was a moonshine night. It was bright moonlight."

Twelve witnesses testified for the State and for the defendant. We have carefully examined the testimony. We will not attempt to set it all out in this opinion. The defendant and his witnesses testified that when he left Pugh's house just before the killing, he said he believed he would get his wife and go home. Adams said, "I seen a man standing just inside the gate, but I didn't know who he was and I called to him three times, quick as possible, and he began to back out of the gate and he pointed the gun, that is when the shooting started. I shot at him. I did not know who the man was, but I supposed it was the man who had promised to kill me, George Green. * * * Just as I went out the door I seen

a man standing just inside the gate. I called to the man three times quick, and after he began to run backward and point the gun I believed it was George Green. After I called and seen the gun he ran backwards and pointed the gun at me. I called him as fast as I can. I called him George, George, George." The defendant testified at considerable length.

The State's witness Prince Williams testified: "I did not hear January say anything as he was about to leave the house. I suppose I would have heard it if I was paying attention and listening to it. I did not hear him say "well boys, I will go home." He might have said it, but I didn't hear it. I am sure I did not hear that."

This evidence is sufficient to sustain this verdict upon the theory that Joe Ruth was the man who was looking out for the defendant, that Joe Ruth whistled to let the defendant know that Green was out there, that Adams therefore drew his pistol before he left the house and shot down a man who was not armed and was making no effort to assault him, that the defendant was acting from a premeditated design to kill the deceased because the deceased had cursed him in a shameful manner about an hour before—the defendant declaring at the time to George Green: "If you curse me I will split you open." The evidence for the State would sustain a verdict of murder in the first degree and therefore a verdict of murder in the second degree.

If the defendant killed the deceased unlawfully, but without any premeditated design to effect the death of any particular individual, by an act imminently dangerous to another and evincing a depraved mind regardless of human life, he would be guilty of murder in the second degree. If the defendant did not know who the deceased was at the time, or if he believed he was George Green and shot the deceased who was unarmed and making no

attempt to harm the defendant in the manner detailed by the witnesses, said shooting was an act imminently dangerous to another and evinced a depraved mind regardless of human life, and the defendant would be guilty of murder in the second degree, even though he killed the deceased without any premeditated design to effect the death of any particular individual. Taking either view of this testimony we think it sufficient to sustain the verdict that was rendered in this case.

There is evidence here from which all the elements of the crime of which the defendant stands convicted may legally be inferred, and we cannot see, from the record before us, that the jury were not governed by the evidence adduced at the trial, and therefore we will not disturb this verdict.

The defendant testified that the deceased pointed a gun at him when the shooting started. It is sufficient as to this to say that the eye witness Robinson contradicts the defendant. Furthermore, other witnesses who saw the deceased only a few minutes before and after the killing testified that he was not armed, and there is no evidence that a gun was found at or near the place where the deceased was shot. In addition to this, is it not unreasonable to believe that the deceased pointed a gun at the defendant and did not shoot, although the deceased had time to shoot, for, according to defendant's statement, he pointed the gun at him and ran backwards, while the defendant called him three times and shot at him three times and after that the defendant was able to get up and walk some distance away?

There is conflict in the evidence in this case, but this court will not reverse the ruling of the trial court for this reason, where there is evidence legally sufficient to support the verdict, unless the preponderance is such that the jury must have been improperly influenced to render

such verdict. Lindsey v. State, 53 Fla. 56, 43 South. Rep. 87. We cannot say such is the preponderance of this evidence. There is evidence here legally sufficient to support this verdict. Many reasons are urged by counsel why the testimony of the new witness Robinson should not be believed. It is pointed out by counsel that this witness did not mention to any one, not even to his wife, the fact that he saw the shooting in question until about a week before the second trial of the defendant; that the witness was present at the first trial and heard all the evidence. These considerations were doubtless urged with great force by counsel to the jury that tried this case. These matters were very proper to be presented to the jury. The jury and the court, too, saw all the witnesses and heard what they had to say. And yet this jury composed of citizens who lived near the scene of the killing reconciled the seeming conflict in the evidence, or believed the testimony of witnesses for the State and convicted the defendant. And a conscientious, learned judge, who presided at two trials of the defendant and listened to the statements of the witnesses and observed their demeanor and conduct on the stand, refused to grant a motion for a new trial and approved this verdict. The defendant was ably defended and had a fair trial. We cannot disturb the verdict of this jury or overrule the action of this judge on the testimony as we read it.

Another ground of the motion for new trial is, "That the said defendant has not had a fair and impartial trial before a jury of his peers as provided by the constitution and laws of the State of Florida, in that the jury empanelled and before whom the said defendant was tried consisted of only six men, whereas the said panel should have contained twelve men."

Section 3910 of the General Statutes provides: "Twelve men shall constitute a jury to try all capital

cases, and six men shall constitute a jury to try all other criminal cases." A capital case is a case in which a person is tried for a capital crime. A capital crime is one for which the punishment of death is inflicted. The crime of murder in the second degree is punished by imprisonment in the State prison for life, and is not a capital crime.

The defendant having been convicted of murder in the second degree at the former trial he stood acquitted of the crime of murder in the first degree. Thereafter the defendant could only be put upon trial for the crime of murder in the second degree; and, this not being a capital crime, he should be tried by a jury of six men. West v. State, 55 Fla. 200, 46 South. Rep. 93.

Finding no error, the judgment is affirmed.

SHACKLEFORD, C. J., and WHITFIELD, J., concur.

COCKRELL, J., (*concurring*).—I yield a reluctant assent to the affirmance of this judgment.

The motion and affidavit for a continuance were evidently prepared with a haste that finds some excuse under the circumstances, and many of the deficiencies can be overcome. There is one omission, however, that forces me to sustain the denial of the motion,—the entire absence of a suggestion that at any future time the testimony of the particular witness could be procured.

Two juries have found the evidence sufficient to justify a conviction of murder in the second degree, and it is not so scant as to justify me in saying now that it is insufficient.

TAYLOR, J., (*dissenting*). HOCKER, concurs.

I am unable, under the peculiar circumstances of this case, to agree to the conclusion of affirmance arrived at therein in the opinion prepared by Mr. Justice PARKHILL. I admit that the affidavit for continuance filed by the defendant at the last trial was defective in several formal particulars, but, notwithstanding this, what were the facts within the knowledge of the trial judge outside of such affidavit for continuance. The defendant had appealed his case from a former conviction to this court and this court, on the ground that the trial court had erred in not granting him a new trial on the ground of newly discovered evidence, that newly discovered evidence being the evidence of this same witness whose absence was the basis of the application for such continuance, reversed the first judgment of conviction and remanded the cause to the circuit court. Upon hearing of the reversal here the defendant did not wait for our mandate to go down but promptly, though unauthorizedly, had subpoena issued for such newly discovered but absent witness, and put the same in the hands of the sheriff for service. The mandate of this court was received by the circuit court during the term of such circuit court at which the defendant was last tried. As soon as such mandate was received the defendant again promptly had an alias subpoena issued for such newly discovered but absent witness and put the same in the hands of the sheriff for service—but two days thereafter, without any return by the sheriff upon this last subpoena, and in the absence of such newly discovered witness, and notwithstanding the application for continuance by the defendant on the ground of the absence of such witness, the defendant was hurried into trial. This court had reversed the first judgment of conviction practically upon the ground of the absence of an opportunity to the defendant to obtain the evidence of this absent witness, thereby

recognizing its importance to the defendant in his trial, and the defendant was again hurried into a second trial two days after the mandate of this court was received by the circuit court without the evidence of such important witness. Under these circumstances I think that the defendant's application for continuance should have been granted, even though his affidavit therefor was defective in form, and that the court below erred in forcing him to a second trial without ample opportunity being afforded him to obtain the attendance of such absent witness, and that the last judgment of conviction should likewise be reversed.

HOCKER, J., concurs with TAYLOR, J.