853 So.2d 546 (2003)
James L. HALL, Appellant,
v.
STATE of Florida, Appellee.
No. 1D02-0181.
District Court of Appeal of Florida, First District.
August 29, 2003.
*547 Nancy A. Daniels, Public Defender; Steven A. Been, Assistant Public Defender, Tallahassee, for appellant.
Charlie Crist, Attorney General; Daniel A. David, Assistant Attorney General, Tallahassee, for appellee.
WOLF, C.J.
Hall appeals from his conviction for first degree murder and armed robbery. He raises two issues on appeal: 1) Whether the trial court erred in rejecting his request for a 12-person jury, and 2) Whether the written sentence must be corrected to conform to the oral pronouncement. We find merit as to the second issue, but as to the first issue we determine that appellant was not entitled to a 12-person jury because the death penalty was not a possible penalty in this case as a matter of law. We do, however, certify a question of great public importance as to that issue.
The appellant was tried in 1993 and found guilty of first degree felony murder and armed robbery. The appellant was sentenced to life with no possibility of parole for 25 years for the murder and to 10 consecutive years for the robbery. That judgment and sentence was per curiam affirmed by this court in Hall v. State, 643 So.2d 1085 (Fla. 1st DCA 1994).
The appellant filed a motion for postconviction relief based on newly discovered evidence which resulted in a new trial being ordered. Prior to appellant's new trial, the defense argued to the court that it was entitled to a 12-person jury because appellant was on trial for the capital offense of first degree murder; the defense refused to waive that right. The state argued that appellant had no right to a 12-person jury because double jeopardy barred a death sentence at the retrial. The trial court ruled that the case would be tried with a six person jury. At retrial, *548 the six person jury found the appellant guilty of first degree murder and armed robbery.
Article 1, Section 22 of the Florida Constitution states that "[t]he right of trial by jury shall be secure to all and remain inviolate. The qualifications and number of jurors ... shall be fixed by law." Section 913.10, Florida Statutes, and Florida Rule of Criminal Procedure 3.270 require that 12 persons shall constitute a jury to try all capital cases and that 6 persons shall constitute a jury to try all other cases. In State v. Hogan, 451 So.2d 844 (Fla.1984), the supreme court stated that for purposes of defining "capital" under the statute and the rule, "[W]e hold that a capital case is one where death is a possible penalty." Id. at 845 (emphasis added). In appellant's original trial, although the State sought the death penalty, the jury came back with a recommended life sentence which was imposed by the trial court; therefore, at appellant's subsequent retrial, he could not be subject to the death penalty again under principles of double jeopardy. See Bullington v. Missouri, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981).[1]
In Donaldson v. Sack, 265 So.2d 499 (Fla.1972), the supreme court dealt with the correct procedure to be employed in prosecuting first degree murder cases after the death penalty was invalidated by the United States Supreme Court in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). There, the court held that Furman abolished capital offenses as previously imposed in Florida because the traditional definition of a "capital" case was one where the death penalty could be imposed. The effect of the supreme court's decision in Donaldson was that the procedural and substantive aspects of "capital" crimes no longer applied after the death penalty was abolished. See also LeDuc v. State, 448 So.2d 32 (Fla. 1st DCA 1984).
In State v. Hogan, 451 So.2d 844 (Fla. 1984), the supreme court addressed the issue of whether sexual battery of a child was still defined as a "capital" crime for purposes of determining whether a 12-person jury is required after the legislature determined that death could no longer be imposed for that offense. There, the court expressly held that the offense of sexual battery on a child is not a "capital" offense for purposes of requiring a 12-person jury because death was not a possible penalty. The court found that its reasoning in Hogan was consistent with its reasoning in Donaldson v. Sack. Id. at 845.
Appellant relies on State v. Griffith, 561 So.2d 528 (Fla.1990), where the supreme court held, among other things, that a defendant indicted for first degree murder is entitled to trial by a 12-person jury unless that right is waived jointly by the state and the defense. The issue in that case, however, was whether the prosecutor or the court can change the classification of an offense from capital to noncapital by electing not to seek the death penalty. The holding in that case is that a defendant in a capital case is entitled to a trial by a 12-person jury unless that right is waived jointly by the State and the defense. Id. at 529. In Griffith, the supreme court distinguished its opinion in Hogan by *549 pointing out that in Griffith the issue was whether there was a knowing and intelligent waiver by the defense, but in Hogan the issue was whether a 12-person jury was required where the death penalty was no longer a possible penalty as a matter of law. The instant case does not involve a waiver of the 12-person jury, but whether the case can still be considered "capital" for purposes of determining the number of jurors required when the death penalty is not a possible penalty. Thus, the holding and reasoning in Griffith regarding the knowing waiver of the defense does not relate to the question in the instant case and does not support the appellant's argument that the trial court erred in denying his demand for a 12-person jury under the facts of this case. Id. at 529-530. Because the death penalty was not possible as a matter of law in this case, a 12-person jury was not required under the supreme court's reasoning in Hogan. In light of the seriousness of the issue, however, we certify the following question to be one of great public importance:
WHETHER A 12-PERSON JURY IS REQUIRED IN A FIRST DEGREE MURDER CASE WHERE THE DEATH PENALTY MAY NOT BE IMPOSED AS A MATTER OF LAW.
As to Issue 2, the state correctly concedes that the trial court's oral pronouncement of sentence prevails over the written judgment and sentence form. See Marshall v. State, 652 So.2d 974 (Fla. 1st DCA 1995). Immediately following appellant's retrial, the trial court orally pronounced sentence as "life with no possibility of parole for a minimum of 25 years." The trial court's written sentence form indicated that no less than 25 years be served, but the court had inserted life with "no possibility of parole." The written sentence must be corrected to reflect that the sentence on the murder count should be life with no possibility of parole for 25 years.
The sentence as to the first degree murder is vacated with instructions to correct the written sentence in accordance with this opinion.[2] The conviction is affirmed.
ERVIN, J., Concurs; BENTON, J., Dissents with Opinion.
BENTON, J., dissenting.
"Twelve persons shall constitute a jury to try all capital cases...." § 913.10, Fla. Stat. (1991); Fla. R.Crim. P. 3.270 (same). "A `capital case' is a case in which a person is tried for a capital crime. A `capital crime' is one for which the punishment of death is inflicted." Adams v. State, 56 Fla. 1, 48 So. 219, 224 (1908). First degree murder is a capital crime. See Alfonso v. State, 528 So.2d 383, 384 (Fla. 3d DCA 1988) (holding "that the trial court's pretrial decision not to impose a death penalty did not transform first-degree murder into a noncapital crime"); Ortagus v. State, 500 So.2d 1367, 1371 (Fla. 1st DCA 1987). I would reverse appellant's conviction for first degree murder and remand for trial to a twelve-person jury.
Our supreme court has clearly said that it is for the Legislature to decide in which cases twelve-member juries shall sit. "A defendant charged with first-degree murder... has a statutory right to trial by a twelve-person jury .... [because] the legislature has the [constitutional] power to... prescribe the number of jurors (not less than six)." State v. Griffith, 561 So.2d 528, 529 (Fla.1990). "The prosecutor has no such power. The prosecutor cannot, by electing not to seek the death penalty, change the classification of an offense from capital to noncapital and unilaterally determine *550 whether a defendant is entitled to trial by a twelve-person jury. A court cannot do this either." Id. (Emphasis supplied.)
Under our constitution, the "number of jurors ... shall be fixed by law." Art. I, § 22, Fla. Const. This means by statute, not by judicial decision on an ad hoc basis. See Griffith, 561 So.2d at 529; see generally State v. Bloom, 497 So.2d 2, 3 (Fla.1986) ("If we allowed the circuit judge to make pre-trial determinations of the death penalty's applicability, we would be modifying the death penalty's statutory scheme."). The construction of the phrase "by law" in State v. King, 426 So.2d 12, 13 (Fla.1982), bears this out, although another constitutional provision was at issue: "Our constitution, in article I, section 15(b), gives the legislature the authority to provide for the special treatment of juvenile offenders: `When authorized by law, a child as therein defined may be charged with a violation of law as an act of delinquency.... A child found delinquent shall be disciplined as provided by law.' This section has been interpreted as conferring upon a child the right to be treated as a juvenile offender in the manner provided by statute." Id. (Third emphasis in original.)
Treating the classification of capital crimes as within the Legislature's purview, and therefore as a straightforward question of statutory construction, has the practical virtue of avoiding any need for trial courts to decide (and to do so pretrial, see Bloom, 497 So.2d at 3) recondite constitutional questions that may go for years without definitive resolution. The present case is a good example. The majority opinion's central premise is that appellant could not have been sentenced to death after retrial, consistently with the United States Supreme Court's decision in Bullington v. Missouri, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981).
But the United States Supreme Court decided just last term that "the mere imposition of a life sentence" does not preclude a sentence of death after retrial and a second conviction. Sattazahn v. Pennsylvania, 537 U.S. 101, 123 S.Ct. 732, 737, 154 L.Ed.2d 588 (2003). While Sattazahn can be distinguished from the present case on more than one basis, the Sattazahn plurality's stated rationale for authorizing death on remand was that, even though the judge had initially pronounced a life sentence, there had not been "an `acquittal' at a trial-like sentencing phase." Id. Is a life sentence imposed by a Florida judge in a capital caseeven upon the recommendation of a jury (that has not, however, necessarily reached a unanimous verdict as to any one aggravating or mitigating circumstance)"an `acquittal' at a trial-like sentencing phase"? Suffice it to say that the matter is not free from doubt. See Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).
The majority opinion relies on Donaldson v. Sack, 265 So.2d 499, 503 (Fla.1972) (finding no requirement for twelve-person juries, whatever the offense, on the assumption that "`capital cases' ha[d] been eliminated by the U.S. Supreme Court ruling" in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972)), and on State v. Hogan, 451 So.2d 844 (Fla. 1984) (finding no requirement for twelve-person juries in sexual battery cases because the court had held in Buford v. State, 403 So.2d 943, 951 (Fla.1981) "that a sentence of death ... for the crime of sexual assault ... is ... forbidden by the Eighth Amendment as cruel and unusual punishment"). Both Donaldson and Hogan proceeded on the premise that apparent statutory authorization for the death penalty was illusory because the putatively authorizing statutory provisions had been *551 declared unconstitutional. The present case is different.
The statutory language which authorized death as punishment for first degree murder at the time of appellant's offense has not been declared unconstitutional. See generally Howard v. State, 385 So.2d 739, 739-40 (Fla. 3d DCA 1980) ("After the Legislature revitalized the death penalty [in response to Furman] by the enactment of Section 921.141, Florida Statutes (Supp. 1972), ... the trial of a defendant charged with first degree murder, by information, was void because Article I, Section 15(a) of the Florida Constitution prohibits any person from being tried for a capital crime without presentment or indictment by a grand jury.").
In sum, first degree murder cases are capital cases because the Legislature made first degree murder punishable by death. See § 782.04(1)(b), Fla. Stat. (1991); Lewis v. State, 780 So.2d 125, 125 (Fla. 3d DCA 2000) ("Section 782.04(1), Florida Statutes (1995), provides that first-degree murder is a capital felony...."); Alfonso, 528 So.2d at 384; Ortagus, 500 So.2d at 1371 (Fla. 1st DCA 1987) ("Ortagus contends he was not charged with a capital crime because, per the parties' stipulation, the death sentence was not a possible punishment for his crime. Rusaw v. State, 451 So.2d 469 (Fla.1984) (a capital crime is one in which the death sentence is possible). This argument, however, ignores the fact that the legislature has the power to define crimes and set punishments. Id. According to Section 782.04, Florida Statutes (1983), murder in the first degree is a capital offense.").
For the forgoing reasons, I respectfully dissent.
NOTES
[1] It is unclear why the dissent cites Sattazahn v. Pennsylvania, 537 U.S. 101, 123 S.Ct. 732, 154 L.Ed.2d 588 (2003), other than to say that the death penalty was an available sentence at retrial. Sattazahn involves a retrial after a jury deadlock on the penalty phase of first case, a situation unlike the instant case where the first jury rejected the death penalty. Both the State and the defense in this case agree that the death penalty was unavailable as a matter of law.
[2] It is not necessary for the defendant to be present for this clerical correction.