## STATE v. ROBERT F. PETT.

92 N. W. (2d) 205.

September 16, 1958—No. 37,672.

*Daniel S. Feidt* and *Robert I. Lang,* for defendant.
*M. L. Stahlke,* County Attorney, for the State.

KNUTSON, JUSTICE.

Defendant was indicted by the grand jury of Carver County for murder in the first degree. His application to the district court for bail was denied. He then applied to this court to be released on bail. He has not yet been tried and is confined in the county jail in Carver County.

It is the contention of defendant that he is entitled to be released on bail as a matter of right. The state contends and the trial court held that the trial court in its discretion may deny bail to a defendant charged with the crime of murder in the first degree.

Minn. Const. art. 1, § 7, as far as material here, reads:

"* * * All persons shall before conviction be bailable by sufficient sureties, except for capital offenses when the proof is evident or the

presumption great; * * *."

M. S. A. 629.52, which has remained unchanged since we abolished capital punishment, as far as material, reads:

"* * * A person charged with an offense punishable by death shall not be admitted to bail if the proof is evident or the presumption great, * * *."

Capital punishment was abolished in this state in 1911. L. 1911, c. 387.

The argument of the state, adopted by the trial court, is that, inasmuch as murder in the first degree was the only crime punishable by death at the time we abolished capital punishment, the constitution had reference to the offense rather than to the punishment and that murder in the first degree still is murder in the first degree; hence that the trial court now has the same discretion in denying bail to a defendant charged with that offense as it had when the conviction was punishable by death. While there is logic to this argument and the result may well be a desirable one, it is untenable from a constitutional standpoint. In essence, what the state asks us to do is to construe the constitution to read "except for murder in the first degree" instead of "except for capital offenses."

From earliest times the term "capital offense" has had a well-defined meaning.[1] Black, Law Dictionary (3 ed.) p. 275, defines it as follows:

"* * * A capital case or offense is one in or for which the death penalty may, but need not necessarily, be inflicted."

We think that there is no quarrel with the definition of what is a capital offense. Our constitution dealt specifically with the matter of bail. It left it to the legislature to define what was a capital offense. When we abolished the death penalty for murder in the first degree, there no longer was any capital offense here. Our constitution has never been amended to keep pace with the change, nor has our statute been so amended. Of course, an amendment of the statute without an amendment of the constitution would be ineffective to deprive a defendant of rights which he is guaranteed under our bill of rights.

---

[1] See, 6 Wd. & Phr. (Perm. ed.) p. 83, and pocket part.

At common law, the granting of bail was a matter of discretion with the judges. When the bill of rights in our United States Constitution was adopted, we followed largely the common law, simply providing that excessive bail should not be required.[2] Of the original 13 states, some adopted the same language as is used in U. S. Const. Amend. VIII, providing simply that excessive bail should not be required.[3] Some of the states went further and provided that "All prisoners shall be bailable by sufficient sureties, unless for capital offenses when the proof is evident or presumption great."[4] Still others added one more limitation that "All prisoners shall, *before conviction,* be bailable by sufficient sureties, except for capital offenses, where the proof is evident, or the presumption great."[5] (Italics supplied.)

As new states were admitted to the Union, many, including Minnesota, adopted provisions similar to those found in Pennsylvania or Connecticut and South Carolina. The case of Commonwealth v. Lemley (1862) 2 Pittsburgh (Pa.) 362, 363, is an illustration of the early understanding of the courts of the meaning of the language used in these constitutional provisions. In that case the court said:

"At common law, bail is a matter of discretion with the judges. The Court of King's Bench had an unlimited power of admitting to bail for all offences, including treason and murder; but bail was not demandable

---

[2]For a discussion of the probable origin of the language used in U. S. Const. Amend. VIII, see discussion of two judgments for perjury entered in the King's Bench against Titus Oates, 10 Howell's State Trials, col. 1325, found in Weems v. United States, 217 U. S. 349, 390, 30 S. Ct. 544, 558, 54 L. ed. 793, 808.

[3]See, New York Const. art. 1, § 5; Virginia Const. art. 1, § 9; Massachusetts Const. art. 26, § 27; Maryland Const. art. 25; New Jersey Const. art. 1, § 15 (constitution of 1844); New Hampshire Const. part 1, art. 33; North Carolina Const. art. 1, § 14; Georgia Const. art. 1, § 2-109.

[4]See, Pennsylvania Const. art. 1, § 14; Delaware Const. art. 1, § 12 (constitution of 1792). The 1776 Delaware constitution had no provision covering bailable offenses. Most courts hold that this provision does not confer a right to bail after conviction. See, Ex parte Herndon, 18 Okl. Cr. 68, 192 P. 820, 19 A. L. R. 804; Ex parte Voll, 41 Cal. 29; Annotations, 19 A. L. R. 807 and 77 A. L. R. 1235.

[5]See, Connecticut Const. art. 1, § 14; South Carolina Const. art. 1, § 20.

as a right. Of course, the judicial discretion was exercised according to established rules. * * *

* * * * *

"* * * In Pennsylvania bail is not a matter of discretion; it is an absolute right. It is a right guaranteed by the fundamental law of the state; and where, by that law, a prisoner is entitled to the right, no power exists anywhere to deprive him of the full benefit of it. It is not necessary to refer to the Act of 1705. The Constitution itself defines the right. The clause in the Constitution of 1798, copied into our present Declaration of Rights, provides that 'all prisoners shall be bailable, by sufficient sureties, unless for capital offences where the proof is evident or the presumption great.' What is a capital offence within the meaning of this clause? Plainly, an offence for which the death penalty is inflicted—a felony of death."

Rhode Island, in its constitution of 1843 and its present constitution (art. 1, § 9), went one step further and provided that "All persons imprisoned ought to be bailed by sufficient surety, unless for offenses punishable by death *or by imprisonment for life,* when the proof of guilt is evident or the presumption great." (Italics supplied.)

When the Minnesota constitution was drafted, the provisions of the constitutions of states admitted prior to Minnesota were available, and we must assume that they were carefully studied and compared. The language of Minn. Const. art. 1, § 7, no doubt has come down to us from one of the original states of the Union in which we find identical language, through other states admitted prior to Minnesota which had copied this provision from one of the original states. It must be assumed that the provision we adopted was carefully selected from among the various provisions dealing with the subject of bail found in the constitutions of states already admitted to the Union.

Where words used in our constitution have a clear and well-defined meaning, there is no room for construction. Neither the courts nor the legislature have a right to substitute for words used in the constitution having a well-defined meaning other words having a different meaning. That is exactly what we would be doing were we to substitute "murder in the first degree" for "capital offense." Murder in the first degree is

not a capital offense when it cannot be punished by death. The right to amend the constitution rests exclusively with the people, and, if, constitutionally, bail is to be withheld in cases other than capital offenses at the discretion of the trial court, that change must be brought about by an amendment of the constitution. As the constitution now reads, all crimes are bailable.

The question now before us has not been heretofore directly passed upon in this state, but the unanimous holding of courts which have passed upon it is that, when capital punishment was abolished, there no longer were capital offenses and that a constitutional provision such as we have, which has been adopted by many of the states as a part of their bill of rights, gave to all defendants in criminal cases a right to be released on bail.

In In re Perry, 19 Wis. 711, 712, the Wisconsin court said:

"The court are of opinion that since the abolition of capital punishment in this state, persons charged with murder are in all cases bailable."

In In re Ball, 106 Kan. 536, 541, 188 P. 424, 426, 8 A. L. R. 1348, 1352, the Kansas court said:

" '* * * Since there is now no capital punishment in this state, there are no capital offenses, * * *.' * * *

"The constitution, which in this respect is self-executing, left the legislature free to prescribe whatever punishment it saw fit for murder, and all other offenses. The constitution, however, dealt specifically with the subject of bail, and made all offenses which the legislature did not see fit to punish capitally, bailable. The meaning of the bill of rights at the time it was adopted cannot be changed without changing the constitution itself. This the legislature is not competent to do."

In City of Sioux Falls v. Marshall, 48 S. D. 378, 382, 204 N. W. 999, 1001, 45 A. L. R. 447, 450, the court said:

"By virtue of our constitutional provision (article 6, § 8), and since the abolition of capital punishment, bail before conviction is a matter of absolute right in all cases. This constitutional guaranty, however, does not apply to bail after conviction."

In obiter, the Arizona court, in Re Welisch, 18 Ariz. 517, 519, 163 P. 264, 265, said:

"The people of Arizona at the last election, through the adoption of an initiated measure submitted to the voters, abolished capital punishment for murder, so that now all persons charged with the crime of murder, however diabolical or atrocious it may be, and howsoever evident may be the proof of guilt thereof, as well as all other crimes not punishable with death, may, before conviction, demand admission to bail as a strict legal right, which no judge or court can properly refuse."

The general rule is stated in 8 C. J. S., Bail, § 35, as follows:

"A constitutional provision that all persons shall be bailable by sufficient sureties except for capital offenses where the proof is evident or the presumption great leaves the legislature free to prescribe any punishment it sees fit for offenses, and dealing exclusively with the subject of bail, makes all offenses which the legislature does not see fit to punish capitally bailable as of right. Hence, where the legislature abolishes capital punishment for any or for all offenses, the offenses so affected are bailable as of right under the constitutional guaranty."

Defendant relies on State v. Russell, 159 Minn. 290, 199 N. W. 750, and State v. Wilson, 235 Minn. 571, 50 N. W. (2d) 706, and the state relies on In re Salisbury, 153 Minn. 548, 194 N. W. 460. None of these cases are decisive. The first two deal with the right to be released on bail *after* conviction.[6] The constitution deals only with such right *before* conviction. In the last case we held that we would not act until the trial court had exercised its discretion. The opinion is not a model of clarity. We did say:

"She [the defendant] is under indictment for murder in the first degree and bailable under the Constitution. Article 1, § 7. Whether a person so charged should be admitted to bail is primarily for the trial court, and until that court has inquired into the facts of the case and

---

[6]It seems to be the rule that bail after conviction under a constitutional provision such as we have is governed by statute or, in the absence of statute, by the common law. See, City of Sioux Falls v. Marshall, 48 S. D. 378, 204 N. W. 999, 45 A. L. R. 447.

exercised its discretion in the premises, the supreme court will not act. Here the trial judge was of opinion that the offense charged is not bailable, and on that theory denied bail; he did not, as we are advised, exercise his discretion in the matter, being of opinion that he had none to exercise."

It does not appear what disposition was made of the case. All that appears is that this court simply refused to act. From an examination of the original files in that case it is apparent that the matter was not given thorough consideration. No briefs were filed. Apparently no examination was made of the legal issues involved. If we intended to hold in that case that under our constitution a defendant charged with murder in the first degree could be denied bail at the discretion of the trial court, the decision is wrong and should not be followed.

In the case now before us the court denied bail after exercising what it believed to be its discretion based on the above decision. It is easy to understand how it could do so in view of that decision. We think, however, that under our constitution the court had no discretion except in fixing the amount of bail. Inasmuch as the trial court has never acted in that respect and it is a matter which should be acted upon in the first instance by the trial court, we feel that we should take no action here until the trial court has had an opportunity to act in accordance with the law as announced in this opinion. We therefore deny the petition, but without prejudice to the rights of defendant to again apply to the trial court for bail. If the court then denies the application, we think that the proper procedure is to apply here for a writ of habeas corpus.

Petition denied.