265 So.2d 499 (1972)
Anthony DONALDSON, Petitioner,
v.
The Honorable Martin SACK, As Circuit Judge of the Fourth Judicial Circuit, in and for Duval County, Florida, Respondent.
No. 42569.
Supreme Court of Florida.
July 17, 1972.
*500 Lacy Mahon, Jr., of Mahon & Mahon, Jacksonville, for petitioner.
Robert L. Shevin, Atty. Gen., and Raymond L. Marky, Asst. Atty. Gen., for respondent.
DEKLE, Justice.
This original proceeding in prohibition requires us immediately to determine the effect of Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), and its companion cases pertaining to capital punishment, upon the jurisdiction of the circuit courts and courts of record in this state and upon related matters in capital cases. Our jurisdiction derives from Fla. Const. art. V, § 4(2), F.S.A.

INTRODUCTION
It is as a matter of great public interest and for the orderly procedure of speedy trials in our courts that we proceed to an opinion in this matter, even though it must of necessity be subject to any stay that might be granted by the U.S. Supreme Court on or before July 24, 1972.[1] During *501 this interim our trial courts require guidance and defendants must be afforded proper procedures to follow which accord with due process. It is with this in mind and subject to what may be the outcome of any stay or rehearing by the U.S. Supreme Court that we proceed with this opinion because the matter is for this period somewhat in a state of flux and guidance should be promptly extended by this Court.

FACTS
As revealed by petitioner's suggestion and brief, the facts presented in this prohibition are as follows: Petitioner has been indicted for murder in the first degree under Fla. Stat. § 782.04, F.S.A. Immediately prior to the commencement of his scheduled trial, petitioner moved to dismiss or to transfer the cause to the Criminal Court of Record of Duval County on the ground that the circuit court lacked jurisdiction. The motion states that Furman divests the circuit court of its jurisdiction in first degree murder cases. Relying upon the Attorney General's comprehensive opinion analyzing Furman, the respondent circuit judge denied the motion, thus confirming the circuit court's jurisdiction in cases charging first degree murder.

JURISDICTION
Petitioner seeks prohibition to prevent respondent circuit judge from proceeding with the trial set and contends that the Criminal Court of Record of Duval County now has sole jurisdiction by virtue of the U.S. Supreme Court rulings voiding capital punishment as now legislated; ergo, "no capital punishment, no `capital case.'"
Fla. Const. art. V, § 9(2), vests jurisdiction in the criminal courts of record of this state of "all criminal cases not capital." Fla. Const. art. V, § 6(3),[2] provides the jurisdiction of our circuit courts as "all criminal cases not cognizable by subordinate courts." Since Furman v. Georgia, supra, in effect "removes" (until new legislation which may revive it) "capital cases," then there appears to be no logical escape from the fact that our circuit courts at this time, and until any legislation which may revive "capital cases," do not have jurisdiction in those cases heretofore delineated as "capital" and accordingly subsequent to Furman jurisdiction in such cases now pending or being filed vests in the courts of record and may be transferred there in those 17 counties of Florida which have such courts. Of course there is no change with respect to the remaining circuit courts in the other counties of Florida where all such jurisdiction remains in the circuit court for the trial of all felonies. Furman has no jurisdictional effect in those counties.

VALIDITY
We have examined every reasonable avenue to uphold the several statutes and rules insofar as they assert "capital offense," as we must do under the rule favoring validity unless clearly indicated otherwise.[3] We are unable in the face of existing authorities and logic to find support for the continuance of "capital offense" as heretofore applied. Accordingly, it must fall with the U.S. Supreme Court's holding against the death penalty as provided under present legislation. Our decision is compelled by that Court's action.
The Attorney General makes a valiant attempt to analyze and to analogize the statutes to support the continued existence of a "capital offense" which would retain jurisdiction for trial thereof exclusively in the circuit courts of this state. He suggests that the new definition of "capital *502 felonies" under Fla. Stat. 775.081(1), F.S.A. makes these three offenses of first degree murder, kidnaping and rape "capital" for purposes of jurisdiction. We are afraid that this effort meets the same fate as the other arguments for a continuing existence of "capital offense"; we must refer to the penalty section, § 775.082(1) in this consideration, and this leads us right back to the old language of "punishable by death".
Succinctly, we must determine the meaning of "capital offense" following the abolition of the death penalty as heretofore imposed in this state. Some of our sister states have faced a similar situation under slightly different circumstances. In these states, the state legislatures abolished capital punishment and subsequent judicial cases construed its impact upon the constitutional term "capital offenses."
"Since there is now no capital punishment in this state, there are no capital offenses... ."
State v. Johnston, 83 Wash. 1, 2, 144 P. 944, 945 (1914).
"Murder in the first degree is not a capital offense when it cannot be punished by death."
State v. Pett, 253 Minn. 429, 432-433, 92 N.W.2d 205, 207 (1958).
Earlier cases from the U.S. Supreme Court defining "capital offense" support this rationale. They hold that the death penalty must be a possible punishment in all "capital" cases. Fitzpatrick v. United States, 178 U.S. 304, 20 S.Ct. 944, 44 L.Ed. 1078 (1900); Rakes v. United States, 212 U.S. 55, 29 S.Ct. 244, 53 L.Ed. 401 (1909).
Our own Court in the early case of Cox v. State, 63 Fla. 12, 15, 58 So. 49, 50 (1912), citing the relevant provisions of our constitution and statutes held:
"Under the above-quoted provisions of the organic law, a trial on the third count of the indictment should not have been had in the circuit court, since such count charges an offense not capital, and there is a criminal court of record established in Dade county. The circuit court had no jurisdiction to try the defendant on the count charging an offense not capital, or to render a judgment or sentence of conviction predicated on a verdict of guilty under such count."
In Adams v. State, 56 Fla. 1, 14, 48 So. 219, 224 (1908), we defined the term "capital case":
"A `capital case' is a case in which a person is tried for a capital crime. A `capital crime' is one for which the punishment of death is inflicted. The crime of murder in the second degree is punished by imprisonment in the state prison for life, and is not a capital crime." (emphasis added)
In Cotton v. State, 85 Fla. 197, 202, 95 So. 668, 670 (1923), this Court again made reference to "capital offense":
"The issue presented was whether the defendant had been lawfully indicted for a capital offense; that is to say, whether an indictment upon which he should be put on trial for his life had been returned against him." (emphasis added)

SENTENCING
We find no difficulty with a continuation of the sentencing for these former "capital offenses" under § 775.082(1) as automatically life imprisonment upon conviction, inasmuch as that is the only offense left in the statute. (This was not the case when we had before us the earlier case of Barlow v. Taylor, 249 So.2d 437 (Fla. 1971).) The elimination of the death penalty from the statute does not of course destroy the entire statute. We have steadfastly ruled that the remaining consistent portions of statutes shall be held constitutional if there is any reasonable basis for doing so and of course this clearly exists *503 in these circumstances.[4] The comprehensive opinion by Mr. Justice Roberts (now Chief Justice) in Small v. Sun Oil Co., 222 So.2d 196 (Fla. 1969), skillfully analyzes this rule of severability. This position is consistent with the Legislature's express intent in this area. At their 1972 Session, the Legislature foresaw the possibility of the current situation and provided:
"775.082 Penalties for felonies and misdemeanors  (2) In the event the death penalty in a capital felony is held to be unconstitutional by the Florida Supreme Court or the United States Supreme Court, a person who has been convicted of a capital felony shall be punished by life imprisonment."
Ch. 72-118, effective 10-1-72.

RULES  JURY
Consistent with our consideration of the constitutional and jurisdictional questions is a review of our own Court rules which are likewise affected. No longer applicable are those portions of rules which are based upon "capital offenses," such as Criminal Court Rule 3.270, 33 F.S.A. requiring twelve persons to constitute a jury to try "all capital cases."[5] That portion of the rule remains, however, for the six person jury to try "all other criminal cases," now including those formerly designated as "capital". There is no constitutional denial of due process here inasmuch as the Florida constitutional provision in art. I, § 22, is only that the number of jurors shall be "not fewer than six" and "shall be fixed by law." Pursuant thereto the law fixed the number at twelve for "capital cases" but "capital cases" having been eliminated by the U.S. Supreme Court ruling leaves in effect the six jurors for all cases. There may be defendants who would prefer a 12-man jury, but unfortunately this "went by the board" along with these U.S. Supreme Court holdings. This would not constitute a ground for remaining in the circuit court where formerly 12-man juries were provided by the statute[6] nor for retaining 12-man juries in interim "capital" trials in circuit courts or courts of record, pending any "revival" of "capital cases" by legislation.

RULES  SPEEDY TRIAL
In connection with the "speedy trial rule" (Crim.Rule 3.191), we would simply observe that it continues to apply in these as in all cases but would point out in particular the exceptional circumstances for continuances in that Rule § 3.191. The present circumstances will obviously be one of the "exceptional circumstances" contemplated by this provision of the rule to be taken into account with all other factors by the trial judge in affording necessary continuances consistent with the rule and yet affording the speediest trial available within such limitations. Under the circumstances here present the trial judges must be given wide discretion. The requirement that this new caseload must now be imposed upon the several courts of record in those 17 counties within Florida which have such special courts for criminal trials will mean a consideration in this regard as to the Rule's "exceptional circumstances", in order that justice may be afforded both to the defendant and to the public in reaching a trial which is "speedy" as to both and yet consistent with circumstances surrounding the trial procedure.

VOIR DIRE
It is also interesting to note that voir dire examination apparently does not *504 presently need to include inquiry regarding capital punishment and thus the rule in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), and its progeny will be of no concern unless "capital cases" are restored by the Legislature.

BIFURCATED TRIAL
Fla. Stat. § 921.141(2) (a), as amended by § 1, Ch. 72-72, effective 10-1-72, applies to criminal offenses which may be punished by death and requires separate trials on the issues of innocent v. guilt and life v. death. Such matter of bifurcated trials is not of concern and of course is not applicable at this point.

GRAND JURY
Respondent further contends that since Fla. Const. art. I, § 15, commands that indictments in "capital cases" may only be by indictment by a grand jury, that the state attorney or a county solicitor is therefore not authorized to file an information charging a "capital offense" so that such cases remain cognizable only in the circuit court. This argument falls for the same basic reason that the argument attempting to retain "capital cases" as such must fall.
The contention is made from the opposite side that there now remains no decisive penalty for first degree murder, rape and kidnaping to be applied. We cannot agree. The imposition of life imprisonment upon conviction in the three categories of first degree murder, rape and kidnaping follows from that provision still remaining in Fla. Stat. § 775.082.
The removal of capital punishment only removes "capital cases" as that term has been known. The offense  and the imposition of a life sentence upon conviction  remains. Or as the musical lyric puts it: "The song is ended but the melody lingers on." There simply is not at this time such a designation as a "capital case" as set forth in the several provisions of our Constitution, statutes and rules.
It therefore follows that until further legislation a grand jury can no longer indict for a "capital case" by that name because there is no "capital offense" for which they can do so. The difference is only in form, however. The constitutional requirement for indictment for "capital crime" only by a grand jury does not mean that a person cannot now be indicted or informed against and thereupon tried for what has heretofore been delineated as a "capital crime". It simply is no longer a "capital crime" and therefore it proceeds as any other felony under the same Fla. Const. art. I, § 15(a), in its 2nd clause: "or for other felony without such presentment or indictment or an information under oath filed by the prosecuting officer of the court... ." (emphasis ours) Likewise, other indictments and presentments by a grand jury continue as before, as well as under the common law, as modified by statutory provisions.[7]

BAIL
The constitutional and statutory provisions for bail[8] do not change by the elimination of "capital offense" because the constitutional provision in art. I, § 14, for bail, limits the right to bail not only as to those "charged with a capital offense" but continues "or an offense punishable by life imprisonment and the proof of guilt is evident or the presumption is great." And of course this condition continues in the former "capital cases" since they now become punishable by life imprisonment.[9]

*505 PRISONERS UNDER DEATH SENTENCE
We have given general consideration to any effect upon the current legislative enactment to commute present death sentences to become effective October 1, 1972.[10] The statute was conditioned upon the very holding which has now come to pass by the U.S. Supreme Court in invalidating the death penalty as now legislated. It is worded to apply to those persons already convicted without recommendation of mercy and under sentence of death. This provision is not before us for review and we touch on it only because of its materiality in considering the entire matter.

JANUARY 1, 1973
Beginning January 1, 1973, the effective date of new Fla. Const. art. V, the circuit court in all circuits will have jurisdiction of all felonies. Fla. Const. art. V § 5(b), eff. 1-1-73, gives "jurisdiction not vested in the county courts" to the circuit courts. Fla. Const. art. V, § 6(b), gives the county courts "the jurisdiction prescribed by general law." Fla. Stat. § 26.012 amended by § 3 of Ch. 72-404, also eff. 1-1-73, gives jurisdiction to the circuit court of "all felonies" as well as some misdemeanors. Fla. Stat. § 34.01, F.S.A., amended by § 9 of Ch. 72-404, eff. 1-1-73, provides the jurisdiction of the county courts as "all criminal misdemeanor cases not cognizable by the circuit courts."
Thus the entire matter of jurisdiction between courts will resolve itself under our new Article V on January 1, 1973 (another demonstrated benefit of this Court revision). Meanwhile, we may look to this Court's recent innovative Rule 1.020, R.C.P., 30 F.S.A., for the assignment of judges by need, which has been the effective means of expediting the large caseloads over this state. Under this Rule, the circuit judge can be assigned along with the case to the proper court if necessary for prompt disposition and trial.
Beginning January 1, 1973, when new Article V of the Florida Constitution becomes effective, present courts of record become circuit courts whose jurisdiction will then include those cases formerly denominated as "capital."

SUMMARY
In summary then, we must hold consistently with the recent U.S. Supreme Court ruling in Furman that Florida no longer has what has been termed a "capital case" and accordingly jurisdiction of such formerly designated "capital cases" now vests in the applicable courts of record of this state in those counties having such courts and in the circuit court in others. The other related matters thereon follow the views hereinbefore set forth.
Time for filing any petitions for rehearing is shortened to 12:00 noon on Monday, July 24, 1972, in view of the necessity for expediency in this matter of great public interest.
Accordingly, writ of prohibition should issue. We withhold the issuance of a formal writ of prohibition in full confidence that the able circuit judge will transfer this cause to the Duval County Court of Record for further proceedings consistent with this opinion.
It is so ordered.
ROBERTS, C.J., and ERVIN, CARLTON, ADKINS, BOYD and McCAIN, JJ., concur.
ROBERTS, Chief Justice (concurring specially):
I concur in the opinion and judgment with some reservation and on the assumption *506 that the decision of the Supreme Court of the United States in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), and its companion cases relating to capital punishment will not be disturbed by that court on petition for rehearing which has not as yet been disposed of there.
I have carefully read and considered the nine separate opinions of the Justices of that Court and am not yet certain what rule of law, if any, was announced that has the support of a majority of the Court. At best, the decision was five-four on whatever rule was declared. On rehearing, this sharply divided ruling could easily change.
Each Justice has enunciated an individualistic and divergent view with regard to the unconstitutionality of the death sentence under the factual circumstances presented in the cases before them. Justices Brennan, Stewart, White, Marshall and Douglas concurred to a degree as to some common principle. Chief Justice Burger, and Justices Blackmun, Powell and Rehnquist dissented.
Justice Brennan espoused that it is a denial of human dignity for the state arbitrarily to subject a person to an unusually severe punishment that society has indicated it does not regard as acceptable and that cannot serve any penal purpose more effectively than a less drastic punishment. Under this test and principles, the death penalty, he asserts, is cruel and unusual punishment regardless of the circumstances calling for the imposition thereof. He rejects any imposition of the death penalty as punishment.
Justice Marshall, after a lengthy historical and statistical discussion, concludes, as did Brennan, that the death penalty is unconstitutional per se because he says it is excessive, immoral and discriminately imposed. He opines, "There is but one conclusion that can be drawn from all of this  i.e. the death penalty is an excessive and unnecessary punishment which violates the Eighth Amendment."
Although Justice Stewart explicitly states that he found it unnecessary to reach the question as to whether the infliction of the death penalty would be constitutionally impermissible in all circumstances, he does indicate that a death penalty uniformly applied, such as a legislative determination that forcible rape and murder can be deterred only by imposing the death penalty upon all who perpetrate those offenses, would not be considered a cruel and unusual punishment. Justice Stewart finds the death penalties in the instant cases under the particular facts involved therein to have been unconstitutionally imposed because the penalty was capriciously and arbitrarily imposed in a wanton and freakish manner.
Justice White emphasizes that by his opinion he does not intimate that the death penalty is unconstitutional per se or that there is no system of capital punishment that would comport with the 8th Amendment. He finds the statutes involved in the cases before the Court to be unconstitutional, and, because of the infrequency with which the death penalty is imposed, the threat of execution is too attenuated to be of substantial service to criminal justice. He opines that the delegating of sentencing authority to the jury which acts in its own discretion causes the death penalty to lose much of its force.
Whether a mandatory death penalty would otherwise be constitutional was a question not reached in Justice Douglas' opinion. Rather he concluded that the statutes authorizing the imposition of the death penalty on a discretionary basis were unconstitutional. Justice Douglas explicates that the Court's task was not restricted to divine what motives impelled these death penalties. "Rather we deal with a system of law and of justice that leaves to the uncontrolled discretion of judges or juries the determination whether defendants committing these crimes should die or be *507 imprisoned. Under these laws, no standards govern the selection of the penalty." Justice Douglas apparently feels that the discretion of judges and juries enables the penalty to be selectively applied, feeding prejudices against the accused and saving those in socially prominent and protected positions.
The common principle espoused by the dissenters is judicial self restraint. Designation of punishments for crimes is particularly within the sphere of the state and federal legislative bodies.
Chief Justice Burger, in addition to espousing the primacy of the legislative role in this area, expresses the view that "The selectivity of juries in imposing the punishment of death is properly viewed as a refinement on rather than a repudiation of the statutory authorization for that penalty. Legislatures prescribe the categories of crimes for which the death penalty should be available, and, acting as `the conscience of the community,' juries are entrusted to determine in individual cases that the ultimate punishment is warranted."
Justice Blackmun fears that the majority decision will cause a regression of an "antique mold" in the criminal process if the reservations expressed by Stewart and White, that capital punishment may not be unconstitutional so long as it is mandatorily imposed, command support because the result would be that statutes stricken today would be reenacted to prescribe the death penalty without any alternative for imposition of lesser punishment.
Justices Powell and Rehnquist discuss judicial restraint and stare decisis. Powell iterates that whether capital punishment is an appropriate sanction is a policy decision to be made by each state, and he further states, "Rarely has there been a more appropriate opportunity for this Court to heed the philosophy of Mr. Justice Oliver Wendell Holmes." As Mr. Justice Frankfurter reminded the Court in Trop: (Trop v. Dulles, 356 U.S. 86, 78 S.Ct. 590, 2 L.Ed.2d 630) "The whole of (Mr. Justice Holmes') work during his thirty years of service on this Court should be a constant reminder that the power to invalidate legislation must not be exercised as if, either in constitutional theory or in the act of government, it stood as the sole bulwark against unwisdom or excesses of the moment." 356 U.S., at 128, 78 S.Ct. at 612.
By way of caveat in the event a different rule should emerge on rehearing in the Supreme Court of the United States, it would then be necessary to re-examine the question here.
NOTES
[1] That Court's procedural rules applying to Furman provide that the filing of a petition for rehearing does not affect the finality of the case. The judgment in Furman becomes final 25 days after the date of decision unless the Court grants a stay order; if not issued, Furman is final on the 25th day, i.e., July 24, 1972, subject naturally to recall on a rehearing. (Our rule is of course different. F.A.R. 3.14 and 3.15, 32 F.S.A.)
[2] Fla. Stat. § 26.53, F.S.A., is to the same effect.
[3] Driver v. Van Cott, 257 So.2d 541 (Fla. 1972) (Dekle, J.); Hill v. State, 238 So.2d 608 (Fla. 1970); Dickinson v. Davis, 224 So.2d 262 (Fla. 1969); and Davis v. State, 146 So.2d 892 (Fla. 1962).
[4] Driver v. Van Cott, 257 So.2d 541 (Fla. 1972) (Dekle, J.); Cramp v. Board of Public Instruction of Orange Co., 137 So.2d 828 (Fla. 1962).
[5] Other Criminal Rules mention capital offenses: Bail 3.130; Indictment  (Grand Jury) 3.140; 3.730 and 3.770, cause for not pronouncing death penalty to a pregnant woman; 3.191, Speedy Trial.
[6] Fla. Stat. § 913.10, F.S.A.
[7] Portee v. State, 253 So.2d 866 (Fla. 1971).
[8] Fla. Const. art. I, § 14; Fla. Stat. Ch. 903 (1971).
[9] The absence in our Crim.Rule 3.130 of "and life imprisonment" cannot override the constitutional provision outlined.
[10] Fla. Stat. § 775.082(3), as amended by § 1 of Ch. 72-118, eff. 10-1-72, requiring that if the death penalty in a capital felony should be held unconstitutional, "the court having jurisdiction over a person previously sentenced to death for a capital felony shall cause such person to be brought before the court, and the court shall sentence such person to life imprisonment with no eligibility for parole."