352 So.2d 853 (1977)
Renaldo REINO, Sr., Petitioner,
v.
The STATE of Florida and the Honorable Gerald T. Wetherington, As Judge of the Circuit Court of the Eleventh Judicial Circuit in and for Dade County, Florida, Respondent.
STATE of Florida ex rel. Renaldo REINO, Jr., Petitioner,
v.
The Honorable Gerald T. WETHERINGTON, As Judge of the Circuit Court of the Eleventh Judicial Circuit in and for Dade County, Florida, Respondent.
Nos. 50656 and 50705.
Supreme Court of Florida.
October 27, 1977.
Rehearing Denied December 28, 1977.
*855 Theodore L. Tripp, Jr. and Tobias Simon, Miami, and Phillip A. Hubbart, Public Defender, Miami, and Elliot H. Scherker, Asst. Public Defender, Miami, for petitioner.
Robert L. Shevin, Atty. Gen., Tallahassee, Richard E. Gerstein, State Atty., Miami, Paul M. Rashkind and Kurt Marmar, Asst. State Attys., Miami, for respondent.
SUNDBERG, Justice.
By indictment filed August 5, 1976, petitioners were charged with murder in the first degree. Specifically, the indictment charged that the petitioners shot a man to death on September 7, 1972. Both father and son are charged with the same crime and both have filed a suggestion for writ of prohibition contending that prosecution is barred by the statute of limitations in effect on the date of the alleged offense.[1] We have issued a rule nisi in prohibition as to each petition. The causes have been consolidated for briefing, oral argument, and final disposition.
On November 17, 1976, a lengthy hearing was conducted on the petitioners' motions to dismiss. The petitioners argued that they should be released on the grounds that the statute of limitations had run prior to the filing of the indictment. It was their assertion that the crime was subject to a two-year period of limitations because the murder followed the decision of the United States Supreme Court in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), and preceded the adoption of a new death penalty statute on October 1, 1972. Predicated on his discernment of legislative intent, the trial judge rejected this contention and denied the motions to dismiss. The instant petitions seeking the issuance of writs of prohibition followed.
Jurisdiction in this Court is predicated on Article V, Section 3(b)(4), Florida Constitution, wherein writs of prohibition are authorized in causes within the jurisdiction of this Court to review. Petitioners claim this Court has jurisdiction to review both final and non-final orders in causes in which the death penalty can be imposed. Article V, Section 3(b)(1) and (3), Florida Constitution. While they assert that no death penalty is available in these cases, petitioners contend the trial court's ruling does reach to another and different major characteristic of capital crimes  the non-applicability of the statute of limitations. Petitioners argue causes may be "capital" for purposes of this Court's jurisdiction even though the death penalty is unavailing. They maintain this construction is logical because the trial judge found that the instant causes retained enough vigor as a capital crime to prevent the statute of limitations from applying despite the Furman decision. If causes can be "capital" for some trial purposes but not for others, they should be "capital" for purposes of this Court's jurisdiction in the instant cases.
Although the jurisdictional point is novel and not without doubt, since the trial court has concluded that the State is not time-barred from prosecuting petitioners under a statute of limitations providing for prosecution at any time for an "offense punishable by death," we conclude jurisdiction lies in this Court pursuant to Article V, Section 3(b)(4), Florida Constitution.
The determinative question before this Court is whether "capital" crimes committed between July 24, 1972, the effective date of the decision of the United States Supreme Court in Furman v. Georgia, supra, and October 1, 1972, the period when capital crimes did not exist in the State of Florida, are subject to the two-year statute of limitations codified in Section 932.465, Florida Statutes (1973).
At the hearing on the motions to dismiss the indictments, petitioners relied heavily on this Court's decision in State ex rel. Manucy v. Wadsworth, 293 So.2d 345 (Fla. 1974). The Manucy opinion was rendered *856 in consolidated cases which were before the Court on a petition for writ of prohibition as to Manucy and petition for certification of question as to Wilbur Estell Barber and Huey Leroy Fullard. In Manucy, the petitioner was charged on September 7, 1972, with first degree murder. The offense charged was alleged to have occurred four years preceding the filing of the affidavit for the arrest warrant. The warrant for arrest was issued on September 7, 1972, and Manucy was arrested on September 9, 1972. Prosecution against Barber and Fullard was commenced by issuance of an arrest warrant on January 14, 1972, charging them with murder in the first degree for a homicide occurring August 17, 1969. A grand jury indictment was filed on January 20, 1972.
The Court recited that the common question involved in the consolidated cases arose as an incidental consequence of the Furman decision. In analyzing the Manucy case, the Court pointed out that the death penalty was abrogated in Florida for the period from July 24, 1972, to October 1, 1972 (the hiatus period) as a result of Furman and the legislature's subsequent enactment of Section 921.141, Florida Statutes (1973), effective October 1, 1972. Hence, capital crimes were abolished during the hiatus period subjecting all former capital crimes to prosecution within a two-year period. Manucy contended that statutes of limitation are procedural and, consequently, the statute in force [Section 932.465(2), Florida Statutes (1971)] at the time of his arrest was applicable to bar prosecution. The Court rejected this contention by holding that statutes of limitation in criminal prosecutions vest substantive rights. Consequently, the statute in effect at the time of the incident giving rise to the criminal charge is controlling. 293 So.2d 345 at 347.
The State urges, and the trial court concluded, that the statement in the Manucy opinion "subjecting all former capital crimes to prosecution within a two year period" [293 So.2d 345, 346] is mere dictum. The prosecution maintains that the only holding of the decision is that statutes of limitation are substantive rather than procedural. Lane v. State, 337 So.2d 976 (Fla. 1976), is cited by the State as supportive of this position. The question in Lane was whether the application of a statute of limitations is a quasi-procedural matter so as to fall within subsection (3) of Section 775.011, Florida Statutes (1975). We determined that it is not and cited Manucy as authority for this proposition. However, such reference to Manucy in Lane can hardly be determinative of the issue before us in the instant cases.
As pointed out by petitioners, Manucy stands for two interrelated propositions of law; (i) the two-year statute of limitations was in effect for crimes previously denominated capital during the hiatus period; and (ii) the statute of limitations in effect at the time of the commission of the crime controls. Brief of Renaldo Reino, Jr., p. 17. Had the Court not first concluded that the two-year statute of limitations would apply during the hiatus period, it would not have been necessary to distinguish between the date of the alleged crime and the date of arrest, for Manucy's contention would have been irrelevant. In essence, the question of whether the statute of limitations is substantive or procedural is relevant only if it is necessary to determine the time at which the statute is to be applied. If there were no distinction between pre-Furman and the hiatus period insofar as the period of limitations is concerned, then it would not have been necessary to ascertain the date for application of the statute. Accordingly, we reject the notion that the first proposition of law from Manucy enunciated above is dictum.
Accepting that one of the holdings of Manucy was that the two-year statute of limitations was in effect during the hiatus period, we are confronted with the assertion by the trial judge that this Court's decision "represents a simplistic and mechanistic dictum on the subject." With all due respect to the learned trial judge, his conclusion fails to consider Manucy in light of Donaldson v. Sack, 265 So.2d 499 (Fla. 1972), decided on July 17, 1972 (prior to denial of rehearing in Furman). In anticipation that *857 Furman would not be revised on rehearing, this Court in Donaldson undertook an analysis of the ramifications of the United States Supreme Court decision. The specific issue presented in Donaldson concerned the jurisdiction of circuit courts to try cases charging first degree murder. Article V, Section 9(2), Florida Constitution of 1968, vested jurisdiction in the criminal courts of record of this State over "all criminal cases not capital." Article V, Section 6(3), Florida Constitution of 1968, granted jurisdiction to the circuit courts with respect to "all criminal cases not cognizable by subordinate courts." The Court opined that since Furman eliminated capital cases (those in which the death penalty is a possible punishment), circuit courts, until such time as new legislation might revive "capital cases," did not have jurisdiction in those cases theretofore delineated as capital. Consequently, it was held that subsequent to Furman, jurisdiction in such cases then pending or being filed vested in the courts of record in the seventeen counties having such courts. The authorities cited in Donaldson uniformly hold that the death penalty must be a possible punishment in order for the offense to be a "capital offense." This Court in that case alluded to the "valiant attempt" on the part of the attorney general "to analyze and to analogize" the statutes then in force to support the continued existence of "capital offenses." In much the same fashion as the State contends here, the attorney general there maintained that the definition of "capital felonies" under Section 775.081(1), Florida Statutes (1971), made the three offenses of first degree murder, kidnapping, and rape "capital" for purposes of jurisdiction. In rejecting this argument, the Court said:
... [W]e must refer to the penalty section, § 775.082(1) in this consideration, and this leads us right back to the old language of "punishable by death". 265 So.2d 499, 502.
Thus, it is apparent that this Court rejected the classification rationale here asserted by the State in favor of the penalty rationale in determining the question of subject matter jurisdiction. Accordingly, if jurisdiction of the subject matter of the offense depends upon the permissible penalty, it would seem to follow that the question of whether prosecution is barred by the statute of limitations in force during the "hiatus period" should be measured by the same criteria when it categorizes by reference to offenses punishable by death.
Furthermore, Donaldson is important because it considered some of the procedural ramifications flowing from an elimination of capital offenses. It was determined that in the absence of capital crimes (i) initiation of all criminal proceedings could be by information or indictment and not solely by indictment; and (ii) trials for all criminal offenses would be held before a six rather than twelve-man jury. It was noted that the limitation upon the right to bail for offenses formerly "capital" was not affected because Article I, Section 14, Florida Constitution of 1968, limited the right to bail, not only as to those charged with a capital offense, but also as to those charged with an offense punishable by life imprisonment where the proof of guilt is evident or the presumption is great.
The compelling tenor of Donaldson is to the effect that all attributes of capital crimes, procedural or substantive, fall when and so long as the death penalty is abolished. The State maintains that although procedural changes such as those discussed in Donaldson follow from abolition of the death penalty, substantive matters such as the statute of limitations were not so affected. This assertion, however, is refuted by cases from jurisdictions which have considered the effect of abolition of the death penalty on the substantive question of entitlement to bail. This Court was not presented with that issue in Donaldson because, as noted, the applicable constitutional and statutory provisions limited the right to bail for offenses punishable by life imprisonment as well as those punishable by death. In other jurisdictions, however, where limitation upon the right to bail is reserved for capital offenses where the guilt is evident or the presumption is great, a preponderance of the courts have concluded *858 that an individual charged with a capital felony has an absolute right to bail pending trial when the death penalty is abolished, either legislatively or through operation of the Furman decision. See In re Tarr, 109 Ariz. 264, 508 P.2d 728 (1973); Baumgarner v. Hall, 253 Ark. 723, 506 S.W.2d 834 (1972); Ex parte Ball, 106 Kan. 536, 188 P. 424 (1920); State v. Pett, 253 Minn. 429, 92 N.W.2d 205 (1958); Commonwealth v. Truesdale, 449 Pa. 325, 296 A.2d 829 (1972); State v. Johnson, 61 N.J. 351, 294 A.2d 245 (1972); Edinger v. Metzger, 32 Ohio App.2d 263, 290 N.E.2d 577 (1972); and Ex parte Contella, 485 S.W.2d 910 (Tex.Cr.App. 1972). Hence, it is apparent that all incidents of capital crimes, substantive as well as procedural, become inapplicable upon abolition of the death penalty. It would be conceptually inconsistent to conclude that the procedural advantages inuring to a defendant in a capital case fall with abolition of the death penalty and then conclude that the substantive disadvantages (limitation on entitlement to bail and unlimited statute of limitations) remain viable.
In support of the trial judge's ruling, the State declares the need to construe what appears to be the plain and unambiguous terms appearing in Section 932.465, Florida Statutes (1973). After contending that a literal reading and application of that section would lead to an absurd result because the offense of first degree murder historically has never been subject to a statute of limitations in this State, respondent resorts to a device of statutory construction based upon the principle of incorporation by reference. It is asserted that the crimes denominated capital prior to Furman were incorporated by reference into Section 932.465, Florida Statutes (1973), and the invalidation of the penalty section of the Florida Statutes left Section 932.465(1) viable. To support its assertion, the State cites authority standing for the general proposition that when a statute adopts by reference another statute or some of its provisions, the adoption is as of the time of adoption and subsequent modification or repeal of the adopted statute does not affect the adopting statute. See VanPelt v. Hilliard, 75 Fla. 792, 78 So. 693 (1918); Annot.: Effect of modification or repeal of statutory provision adopted by reference in another provision  federal cases, 2 L.Ed.2d 2048 (1958); Annot.: Effect of modification or repeal of constitutional or statutory provision adopted by reference in another provision, 168 A.L.R. 627 (1947). As stated earlier in this opinion, the classification rationale was rejected in Donaldson v. Sack, supra, with respect to the question of subject matter jurisdiction. The incorporation by reference argument was just as apt in Donaldson where it could have been said that the penalty statute was incorporated in the constitutional and statutory provisions delineating the jurisdiction of the circuit courts. Therefore, the Furman invalidation of the capital penalty left those jurisdictional provisions unaffected. We believe this premise was implicitly disposed of in Donaldson by the language in the opinion heretofore quoted. Whether or not the view of reference statutes here advanced was disposed of implicitly in Donaldson, it cannot prevail in these proceedings. Respondent quotes the general rule with respect to a statute incorporating another statute or some of its provisions as set forth in 168 A.L.R. 627, 628. However, the State fails to quote the rule in its entirety as it applies to adopting statutes which refer to general law regulating the subject, which is the case at bar. The remainder of the rule enunciated at p. 628 of the Annotation continues:
... but if reference in the adopting statute is to the general law regulating the subject, the incorporation is of that general law as it exists from time to time or at the time the exigency arises to which the law is to be applied. ... (Emphasis supplied)
The annotator concluded that the Florida cases on the subject of reference to general law, taken in the aggregate, did not seem to be in harmony with the general rule stated. But, closer scrutiny of the Florida cases leads us to believe the annotator to be in error and that in the circumstances of these proceedings, the general rule should apply if we are to indulge in the art of devining *859 legislative intent. Florida cases decided subsequent to the date of the latest case considered by the annotation bear out this conclusion. The original case on the subject, Jones v. Dexter, 8 Fla. 276 (1859), followed the general rule in construing an act which provided that property in the hands of an executor or administrator "shall be distributed according to the provisions of the law regulating descent." The Court held that the legislative intent was to refer to any law of descent which might be in force at the time that the right to the distribution might become vested.
Disharmony occurred when the Court in Bushnell v. Dennison, 13 Fla. 77 (1870), conceded the correctness of Jones with respect to the proposition that the "law regulating descent" mentioned in the act for distribution was to be the law in force at the time the contingency occurred, but nonetheless overruled Jones as to the applicability of several provisos subsequently added to the adopted law by amendment. At best, Bushnell v. Dennison, supra, is equivocal. Apart from VanPelt v. Hilliard, supra, which dealt with incorporation of a specifically described statutory section, the only remaining cases on the subject in Florida dealt with in the annotation are Williams v. State, 100 Fla. 1570, 131 So. 864 (1930), its companion case, Kennedy v. Watson, 100 Fla. 1576, 131 So. 866 (1930), and State v. Harllee, 100 Fla. 1562, 131 So. 866 (1930). In the companion cases, the Court held that a statutory provision allowing constables fees "allowed sheriffs for like services" limited the constable to fees allowed sheriffs by the same general enactment (Rev.Gen.St. 1920, §§ 2891, 2899) even though by later amendment fees for sheriffs were increased. The Harllee case presented the same question with respect to fees of justices of the peace in connection with fees allowed to clerks of the circuit court for similar services. In that the adopting and adopted provisions were sections of the same general enactment (Rev. Gen.St. 1920, §§ 3084, 3384), a majority of the Court reached the same result as in the constable cases. In Harllee, the rule was articulated:
When one provision of a statute by general words of reference adopts provisions that appear only in another section of the same statute, future amendments of the adopted provisions are not to be regarded as included in the adoption unless an intent to include such future amendments in the adopting provision clearly appears. (Emphasis supplied) 131 So. 866, 868.
It appears, then, that the Court engrafted a variation on the general rule where the adopted provision was enacted at the same time as and as another section of the same statute in which the adopting provision appears. Consistent with Jones v. Dexter, supra, and the great weight of authority, it is apparent that the general rule applies in the instant proceedings because the provisions asserted to be incorporated by reference in Section 932.465, Florida Statutes (1973), are separate, non-specified general law, not a part of the same statute or enactment. This analysis of the state of the law in Florida relating to incorporation by reference is borne out by the later decisions of Hecht v. Shaw, 112 Fla. 762, 151 So. 333 (1933), and State v. Smith, 189 So.2d 846 (Fla.4th DCA 1966). The former involved a maintenance tax statute which adopted by reference the procedure for assessment, collection, and sale of lands for nonpayment of taxes contained in the law establishing the Everglades Drainage District Taxing Authority. In approving the adopting statute, the Court recited as authority the general rule respecting adopting statutes including the proviso:
But when the adopting statute makes no reference to any particular statute or part of statute by its title or otherwise, but refers to the law generally which governs a particular subject, the reference in such a case includes not only the law in force at the date of the adopting act, but also all subsequent laws on the particular subject referred to, so far at least as they are consistent with the purpose of the adopting act. 151 So. 333.
State v. Smith, supra, involved the question of whether a city may adopt by reference in *860 an ordinance all present and future misdemeanors which shall be recognized by the State of Florida. Citing to the annotation in 168 A.L.R. 627 and Hecht v. Shaw, supra, the district court of appeal answered the question in the affirmative. See also Jaramillo v. City of Homestead, 322 So.2d 496 (Fla. 1975).
Respondents submit that the trial judge was in error by concluding that the provisions of Section 932.465, Florida Statutes (1973), are ambiguous so as to require resort to statutory construction to ascertain legislative intent. In the alternative, they maintain that if statutory construction is required, the trial judge applied the wrong rules of construction. We concur with both assertions. The language of the statute is clear and unequivocal, and thus, legislative intent may be gleaned from the words used without applying incidental rules of construction. Tropical Coach Line, Inc. v. Carter, 121 So.2d 779 (Fla. 1960). Words used by the legislature are to be construed in their "plain and ordinary sense." Pedersen v. Green, 105 So.2d 1 (Fla. 1958). The legislature is presumed to know the meaning of the words it utilizes and to have a working knowledge of the English language. Florida State Racing Commission v. McLaughlin, 102 So.2d 574 (Fla. 1958). It is apparent that the phrase "punishable by death" is susceptible of only a single construction  a crime for which the death penalty may be imposed.
Furthermore, if interpretation of legislative intent beyond the clear language of the statute were deemed necessary, two basic rules of construction were ignored by the trial court. First, criminal statutes are to be construed strictly in favor of the person against whom a penalty is to be imposed. State v. Llopis, 257 So.2d 17 (Fla. 1971); Allure Shoe Corporation v. Lymberis, 173 So.2d 702 (Fla. 1965); Norris v. State, 249 So.2d 746 (Fla.4th DCA 1971); Dotty v. State, 197 So.2d 315 (Fla.4th DCA 1967). Contrary to this well established rule for construing criminal statutes, the trial judge construed the statute in question strictly against the petitioners. Second, statutes of limitation in criminal cases are to be construed liberally in favor of the accused. Bridges v. United States, 346 U.S. 209, 73 S.Ct. 1055, 97 L.Ed. 1557 (1953); Mead v. State, 101 So.2d 373 (Fla. 1958); Mitchell v. State, 157 Fla. 121, 25 So.2d 73 (1946). The reason for such rule is aptly stated in Toussie v. United States, 397 U.S. 112, 114-15, 90 S.Ct. 858, 860, 25 L.Ed.2d 156 (1970):
The purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions. Such a limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past. Such a time limit may also have the salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity. For these reasons and others, we have stated before "the principle that criminal limitations statutes are `to be liberally interpreted in favor of repose.'" (Citations omitted)
Were the foregoing not persuasive to sustain the petitioners' position on the proper construction of the statute, the very actions of the legislature subsequent to Furman, Donaldson, and Manucy unequivocally expressed the intention of that body. As early as March, 1972, the legislature was cognizant of the possibility of the decision reached in Furman. Not only did the legislature revise the death penalty statute to be effective October 1, 1972 (Ch. 72-72, Laws of Florida), it enacted Ch. 72-118, Laws of Florida, filed in the office of the Secretary of State March 30, 1972, which amended Section 775.082, Florida Statutes, by adding a new subsection reading:
In the event the death penalty in a capital felony is held to be unconstitutional by the Florida Supreme Court or the United States Supreme Court, a person who has been convicted of a capital *861 felony shall be punished by life imprisonment.
However, it did not undertake to alter the statute of limitations applicable to capital crimes. Furthermore, notwithstanding the rendition of Donaldson on July 17, 1972, the legislature took no action to amend Section 932.465 during its session in 1973. In 1974, the legislature amended the statute of limitations related to criminal offenses to provide specific time limits for specified crimes. Ch. 74-383, Laws of Florida. Manucy was decided on April 1, 1974. Nonetheless, the legislature took no steps in the 1974 amendment to alter the consequences of Donaldson and Manucy. In both the 1973 and 1974 sessions, the legislature could have amended Section 932.465 retroactively to deal with capital crimes occurring during the "hiatus period" without running afoul of the constitutional ex post facto prohibition. See United States v. Richardson, 512 F.2d 105 (3d Cir.1975); Falter v. United States, 23 F.2d 420 (2d Cir.1928). Prosecution was not yet barred for crimes occurring during the hiatus period when the legislature met in regular session in 1973 and 1974.
It was not until 1976 through the enactment of Ch. 76-275, Laws of Florida, that the legislature provided for no limitation of time in prosecuting a life felony. No attempt was made to apply such provision retrospectively. However, for the first time the legislature spoke to the Furman-type repeal of the death penalty in a statute of limitations by providing:
... In the event the death penalty is held to be unconstitutional by the Florida Supreme Court or the United States Supreme Court, all crimes designated capital felonies shall be considered life felonies for the purposes of this section and prosecution for such crimes may be commenced at any time. Ch. 76-275, Section 1, Laws of Florida.
The core of respondent's argument is that the legislature intended, prior to the enactment of Ch. 76-275, that all crimes "punishable by death" pre-Furman would remain subject to prosecution "at any time" during the "hiatus period." Were that the intention of the legislature, Ch. 76-275 would be a nullity. However, the rule of law is that "when a statute is amended, it is presumed that the legislature intended it to have a meaning different from that accorded to it before the amendment." Arnold v. Shumpert, 217 So.2d 116, 119 (Fla. 1968).
It is inescapable from the holdings in Donaldson and Manucy, from a plain reading of Section 932.465, Florida Statutes (1973), and from any proper construction of that statute based on legislative intent, that prosecution for offenses committed during the period from July 24, 1972, to October 1, 1972, must have been commenced within two years from the date of such offense in order to comply with law. Consequently, the petitioners must be discharged.
There are those advocates of "law and order" among us who will view this decision as another example of courts being "soft on criminals." We would respond by reminding these persons that the petitioners could have been prosecuted had their alleged crimes been detected, and had proceedings been commenced at any time within two years of the homicide. See Toussie v. United States, supra. More significantly, it must be remembered that without law there can be no order. The law must be applied evenhandedly to all lest we run the risk of selective prosecutions. Our government would then become one of men rather than laws. All subscribe to the notion that the law should be enforced. By our decision today, we enforce the law as was enunciated in Section 932.465, Florida Statutes (1973).
The rules nisi in prohibition heretofore issued in these consolidated cases are made absolute.
OVERTON, C.J., and BOYD and HATCHETT, JJ., concur.
ADKINS, J., concurs in result only.
ENGLAND, J., concurs with an opinion.
KARL, J., dissents.
*862 ENGLAND, J., concurring.
It is often said that hard cases make bad law. This case would appear to fall into that category, if viewed in the way it is characterized by the state:
"The effect of the petitioners' interpretation of the limitations statute is clear  all murderers who by chance committed their crimes between the effective date of Furman v. Georgia, supra, and October 1, 1972, the date of the adoption of a new death penalty statute, will be free from prosecution two years after their victims expire."[1]
But there is another (and, I believe, more accurate) way to characterize this case which suggests that it is neither hard to decide nor productive of "bad" law.
Despite the fact that the United States Supreme Court eliminated the possibility of state executions in July of 1972, the various crimes for which the death penalty previously could be imposed, such as murder, kidnapping and rape, still remained the most serious criminal acts recognized by our law. Nothing in the penalty change altered the responsibility of law enforcement officials to detect, apprehend, and obtain indictments against the perpetrators of these crimes as promptly as possible.
What we see here, then, is simply an inability of law enforcement officials, for whatever causes, to find and prosecute expeditiously the perpetrators of this 1972 murder. Statutes of limitations have always barred stale prosecution attempts, even though the product of villainy is the loss of a human life.[2] This case reflects no more than a faithful application of the well-established legal principle that courts are bound to follow explicit legislative guidelines.
NOTES
[1] In 1972, § 932.465, Fla. Stat., read, in pertinent part, as follows:

"(1) A prosecution for an offense punishable by death may be commenced at any time.
"(2) Prosecution for offenses not punishable by death must be commenced within two years after commission... ."
[1] Respondent's brief at p. 7.
[2] The statute of limitations has historically required that prosecutions for second degree murder and manslaughter be initiated within a certain period of time. § 932.465(2), Fla. Stat. (1973) (2 years); § 775.15, Fla. Stat. (1975) (4 years for second degree murder and 3 years for manslaughter).