372 So.2d 445 (1979)
STATE of Florida, Petitioner,
v.
Edward BELL, Respondent.
No. 54745.
Supreme Court of Florida.
June 14, 1979.
C. Marie King, Asst. Atty. Gen., Tampa, for petitioner.
W.C. McLain, Asst. Public Defender, Bartow, for respondent.
The Court having accepted jurisdiction and heard argument, and upon further consideration of the matter, we have determined that the Court is without jurisdiction. Therefore, certiorari is denied.
No Motion for Rehearing will be entertained by the Court. See Fla.R.App.P. 9.330(d).
ENGLAND, C.J., and OVERTON, SUNDBERG and HATCHETT, JJ., concur.
ALDERMAN, J., dissents with an opinion, with which ADKINS and BOYD, JJ., concur.
ALDERMAN, Justice, dissenting.
Relying upon State ex rel. Manucy v. Wadsworth, 293 So.2d 345 (Fla. 1974), Lowe v. Stack, 326 So.2d 1 (Fla. 1974), and Miller v. State, 332 So.2d 65 (Fla. 1976), the District Court of Appeal, Second District, reversed the denial of the defendant's motion to vacate his judgment and sentence on the basis that the trial court did not have jurisdiction to try him. Manucy, Lowe, and Miller, however, are factually distinguishable and do not reach the question posed by the defendant's motion to vacate, i.e., whether a conviction for first-degree murder on a properly filed information is void because the trial commenced after the death penalty was reinstated. I conclude that this Court has jurisdiction because the district court's reliance on these decisions constitutes a misapplication of the law.
On the merits, the issue before us is whether the defendant's conviction and sentence should be vacated and the cause remanded so that he may be tried on a validly returned indictment for the offense of first-degree murder. I disagree with the district court that the judgment and sentence should be vacated; instead, I would quash the decision of the district court and affirm the trial court's denial of the motion to vacate.
The defendant was arrested on June 10, 1972, and charged by information on July 27, 1972, with first-degree murder. Because he was found to be mentally incompetent to stand trial at that time, he was committed to the Florida State Hospital, Division of Mental Health. He subsequently was tried on the information by a six-person jury on January 17, 1974, was convicted, and was sentenced to life imprisonment.
At the time the information was filed, Florida's statutory procedure for imposing the death penalty had been declared unconstitutional by the Supreme Court of the United States in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). Subsequently, this Court, in Donaldson v. Sack, 265 So.2d 499 (Fla. 1972), *446 which was rendered before the information against the defendant was filed, held that, in light of Furman, capital offenses no longer existed in Florida; that those portions of rules, which are based on "capital offenses" such as Florida Criminal Procedure Rule 3.270, requiring twelve persons to constitute a jury to try all capital cases, are no longer viable; that the portion of this rule providing for a six-person jury to try all criminal cases includes those formerly designated as capital; and that the invalidation of capital punishment does not mean that offenses formerly designated as capital may not be prosecuted by information. Therein, we expressly said:
The constitutional requirement for indictment for "capital crime" only by a grand jury does not mean that a person cannot now be indicted or informed against and thereupon tried for what has heretofore been delineated as a "capital crime". It simply is no longer a "capital crime" and therefore it proceeds as any other felony under the same Fla. Const. art. I, § 15(a), in its 2nd clause: "or for other felony without such presentment or indictment or an information under oath filed by the prosecuting officer of the court ..."
265 So.2d at 504.
At the time the defendant in the present case was charged, there were no capital crimes in Florida, the information charging him with first-degree murder was valid, and the circuit court had jurisdiction of this case.
A different situation was presented in State ex rel. Manucy v. Wadsworth, where the defendant was charged by information with first-degree murder after the effective date of the statute reinstating the death penalty, and this Court held that, since Manucy was charged after the revitalization of capital crimes, the constitution required that he be charged by indictment.
The defendant in Lowe v. Stack was informed against on November 20, 1972, for murder in the first degree committed November 13, 1972, after the new death penalty procedure became effective on October 1, 1972. In that case, we held that the defendant should have been indicted as required by article I, section 15(a), Florida Constitution.
In Miller v. State, the first-degree murder was committed in December 1970, and the indictment was returned before Furman. The defendant in that case thereafter was committed to the Florida State Hospital upon the trial court's finding that he was incompetent to stand trial. He was tried in 1974, found guilty, and sentenced to death. Although he argued that he could not be sentenced to death for a capital crime committed before December 8, 1972, this Court held that imposition of the death sentence did not violate article I, section 10, Florida Constitution, prohibiting ex post facto laws, because the sentence did not expose him to a greater penalty then could have been imposed at the time he committed the murder.
The district court in the present case was led into error by its assumption that the defendant had been tried for a capital offense. In fact, he was not tried for a capital offense because the state had elected to proceed against the defendant by information for the noncapital crime of murder. As we held in Reino v. State, 352 So.2d 853 (Fla. 1977), for an offense to be a "capital offense," the death penalty must be a possible punishment. In Reino, Justice Sundberg, speaking for the Court, said: "The authorities cited in Donaldson uniformly hold that the death penalty must be a possible punishment in order for the offense to be a `capital offense.'" 352 So.2d at 857. By proceeding to trial under the validly filed information rather than electing to withdraw the information and indict the defendant, the state precluded the possibility of imposing the death penalty. The death penalty was not a possible punishment, and therefore defendant was not being prosecuted for a capital crime. Cf. Reino v. State. The defendant received a life sentence, and the trial court never treated this case as anything but a noncapital case. He raised no objection and proceeded to trial, secure in the knowledge that his life *447 was not in jeopardy. The defendant was fairly tried, convicted, and sentenced. On appeal, the district court determined on the merits that the judgment and sentence should be affirmed. Bell v. State, 318 So.2d 498 (Fla. 2d DCA 1975). There is no question but that he is guilty of murder.
Article I, section 15(a) provides in pertinent part that no person shall be tried for a capital crime without presentment of indictment by a grand jury. Since defendant's trial proceeded under a validly filed information, he could not receive the death penalty, and he was, therefore, not tried for a capital felony. I would affirm his judgment and conviction.[1]
ADKINS and BOYD, JJ., concur.
NOTES
[1] The majority's discharge of the writ of certiorari without having ruled on the merits of the cause results in the district court's decision becoming the law of this case. The district court has held that the defendant's trial, conviction, and sentence are void. This means that the state may now indict and try him for a capital offense. When asked at the bar of the Court whether his client is willing to risk the possibility that the death penalty be imposed, defense counsel responded that the defendant knew that he could now be subject to the death penalty, and he was willing to run this risk. The defendant, after having led the district court into holding that his trial under the information was a nullity, should not be allowed to later complain if the state elects to seek an indictment against him for first-degree murder and to ask for the imposition of the death sentence. The defendant has made his bed, and he must now be prepared to lie in it.