269 So.2d 207 (1972)
263 La. 685
STATE of Louisiana
v.
Freddie HOLMES.
No. 52812.
Supreme Court of Louisiana.
November 6, 1972.
*208 Fred A. Blanche, III, Baton Rouge, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Harry H. Howard, Asst. Atty. Gen., Sargent Pitcher, Jr., Dist. Atty., Ralph L. Roy, Asst. Dist. Atty., for plaintiff-appellee.
Louise Korns, Asst. Dist. Atty., Parish of Orleans, for amicus curiae.
DIXON, Justice.
On the application of the defendant we granted writs in this case to consider the effect of Furman v. Georgia[1] upon Louisiana procedural law in a murder trial.
A bill of exceptions was reserved by defendant when the trial judge instructed a prospective juror that, since capital punishment can no longer be imposed in Louisiana, only nine of the twelve jurors need to concur to reach a verdict, and the jury would not be sequestered during the trial.
Sequestration of the jury is required by C.Cr.P. 791 "in capital cases."
The size of the jury and the number that must concur to reach a verdict are governed by C.Cr.P. 782, whose source is Article 7, Section 41, Louisiana Constitution of 1921:
". . . Cases, in which the punishment may be at hard labor, shall be tried by a jury of five, all of whom must concur to render a verdict; cases, in which the punishment is necessarily at hard labor, by a jury of twelve, nine of whom must concur to render a verdict; cases in which the punishment may be capital, by a jury of twelve, all of whom must concur to render a verdict."
The word "capital" in criminal law has to do with the death penalty.[2]
Defendant observes that C.Cr.P. 878,[3] in view of the Furman case, might seem to require that we hold our murder statute *209 (R.S. 14:30) unconstitutional, but argues that the better view would recognize that only the imposition and execution of a capital sentence has been reprobated, leaving intact the crimes and the procedural devices applicable to cases in which the death penalty was applicable before Furman.
The State simply argues that there are no more capital cases, and since the only punishment now available for the crime of murder is life imprisonment at hard labor, the constitutional and statutory provisions (nine out of twelve jury verdict, no sequestration) applicable to non-capital felony cases must now apply to what were formerly "capital cases."
The provisions of Article 7, Section 41, quoted above, were taken almost verbatim from the Louisiana Constitutions of 1898, Article 116, and 1913, Article 116. The less serious offenses were triable without juries; more serious offenses were triable with five man juries (unanimous verdict), twelve man juries with nine concurring, or twelve man juries with unanimous verdict. The severity of the offense was legislatively determined and depended upon the maximum penalty which could be imposed for the offense charged.
For at least three-fourths of a century, the legislature has made provisions for procedural matters in criminal cases which depend on the classification of crimes in the Louisiana Constitution.[4] If our legislature eliminated capital punishment, but remained silent with respect to procedural changes, we might be justified in adopting the reasoning of the Statethat all statutory references to capital cases, capital offenses and capital punishment should be ignored. We might conclude that the legislature was aware of its laws on the subject, and chose, in effect, to repeal them tacitly.
However, it was not the legislature, but the United States Supreme Court that has held the imposition and execution of the death sentence, as now applicable in our State, to be violative of the United States Constitution. No presumption arises that any other provision of Louisiana law has been affected by the United States Supreme Court, except those having to do with the imposition and execution of death sentences. Nor, indeed, has the United States Supreme Court eliminated the possibility that the Louisiana legislature might enact statutes which could constitutionally impose the death sentence, when the sentence is mandatory and cannot be applied in a discriminatory manner.
Although the hiatus is obvious and the situation undesirable, we conclude that we should (at least until the legislative process has reorganized the criminal law and procedure in view of Furman) interpret Article 7, Section 41 of the Louisiana Constitution as referring to classes of crimes, and that those which the legislature has classified as capital offenses shall be tried by a jury of twelve, all of whom must concur to render a verdict.
Further, we adopt the same interpretation as to C.Cr.P. 791, and hold that murder is still classified as a "capital case," and that C.Cr.P. 791 requires the sequestration of the jury in capital cases.
For these reasons, Bill of Exceptions No. 1 has merit. Defendant's objection should have been sustained. A mistrial is ordered and the jury is dismissed. (C.Cr.P. 775(3)).

*210 APPENDIX
California and Colorado have adopted the "classification" theory. People v. Anderson, 6 Cal.3d 628, 100 Cal.Rptr. 152, 493 P.2d 880 (1972); People v. District Court (Nixon and McElvray), Colo.1972, 500 P. 2d 358; Contra: State v. Johnson, 1972, 61 N.J. 351, 294 A.2d 245; Ex Parte Contella, Tex.Cr.App.1972, 485 S.W.2d 910; Donaldson v. Sack, 265 So.2d 499 (Fla. 1972).
Capital offenses (capital cases, capital crimes) in Louisiana are:
R.S. 14:30murder
R.S. 14:42aggravated rape
R.S. 14:44aggravated kidnapping
R.S. 14:113treason
Various provisions made applicable to capital offenses by use of the word "capital," or by reference to "death," in Louisiana statutory law, are as follows:

1. capital crime Art. 1, Sec. 9 (indictment by grand jury)
 Art. 7, Sec. 52 (jurisdiction of juvenile courts)
2. capital case C.Cr.P. 291 (authority to conduct preliminary examinations)
 C.Cr.P. 315 (authority to fix bail)
 C.Cr.P. 512 (assigned counsel must have 5 years experience
 "capital offense" used in the same provision)
 C.Cr.P. 557 (court shall not accept unqualified guilty plea)
 C.Cr.P. 578 (commencement of trial must be within 3 years of
 institution of prosecution)
 C.Cr.P. 791 (sequestration of jurors)
 C.Cr.P. 817 (qualifying verdict in capital cases)
 R.S. 15:142 (added by Act 616 of 1972creates an indigent
 defender board for the 8th and 23rd judicial districts
 refers to the rule that the defense counsel
 appointed in a capital case must have 5 years
 experience)
3. capital offense Art. 1, Sec. 12 (no bail provision)
 C.Cr.P. 313 (no bail provision)
 C.Cr.P. 437 (grand jury shall inquire into capital offenses)
 C.Cr.P. 512 (court shall appoint indigent defense counsel with
 5 years experience. Also uses the phrase "capital
 case")
 C.Cr.P. 780 (person so charged cannot waive a jury and ask for
 a bench trial)
 C.Cr.P. 859 (grounds for arrest of judgmentprosecution not
 instituted by a grand jury indictmentsee (8) of
 article)
 C.Cr.P. 933 (definition of capital offense"offense that may
 be punished by death")
 R.S. 15:141 (as amended by Act 736 of 1972statute deals
 with indigent defender boardsprovides that defense
 attorney appointed in capital offense must
 have 5 years experiencesee subsections C and
 F of statute)
4. cases in which the punishment may be capital
 Art. 7, Sec. 41
 C.Cr.P. 782 (unanimous verdict of 12 man jury required)
 offense which may be punished by death
 C.Cr.P. 382 (grand jury indictment needed)
 crime for which the death penalty may be imposed
 C.Cr.P. 571 (no time limit for the institution of prosecution)
 offenses punishable by death
 C.Cr.P. 799 (12 peremptory challenges available)
 felony not punishable by death
 C.Cr.P. 832 (indicates that a person charged with a capital offense
 may object to his temporary voluntary absence
 at the proceedings against him)

*211 BARHAM, J., dissents with written reasons.
TATE, J., concurs with BARHAM, J.'s dissent and assigns additional reasons.
BARHAM, Justice (dissenting).
I dissent from the majority's holding in the instant case for all the reasons stated in my dissenting opinion in State v. Flood, No. 52783 on our docket, 263 La. 700, 269 So.2d 212, this day decided.
We are required here to determine the number of jurors whose concurrence is necessary to render a verdict in what was formerly a capital offense, and to determine whether the requirement for total sequestration of the jury during the trial for such an offense is still in effect.
All the specific legal requirements addressed to "capital offenses", separate and apart from other felonies, were enacted solely because of the nature of the punishment prescribed for such offenses. The possibility of receiving a death sentence would make one on bail for a capital offense less likely to appear for trial. It was the total irrevocability of the death penalty which led our Legislature to require in such cases indictment by grand jury, strict sequestration of the jury from outside influence, agreement of all jurors in order to return a verdict, more experienced counsel, and right of special appellate review, and to make other exceptional rules. The offense, the nature or the class of the offense, was never the determining factor in laying down these special guidelines. It was the severe and irrevocable consequences which accompanied a verdict of guilty that impelled the Legislature and the courts to afford additional safeguards for the defendant.
Donaldson v. Sack, 265 So.2d 499 (Fla. Sup.Ct.1972), has cogently and correctly disposed of the issues here presented and similar issues which may arise in the future, as noted in the appendix to the majority opinion. See also State v. Johnston, 83 Wash. 1, 144 P. 944 (1914).
As shown in my dissenting opinion in State v. Flood, supra, the authority is overwhelmingly in support of such dispositions, with only a single case out of Colorado holding to the contrary. The criterion of "classification of offenses" set forth by the majority and by the court in the Colorado case as justification for the result reached does not reflect the exercise of the judicial function within constitutional limitations.
I am of the opinion that a concurrence of nine out of twelve jurors can convict in cases formerly denominated "capital offenses", and that the usual sequestration rules for other felonies should apply in such cases.
I respectfully dissent.
TATE, Justice (dissenting).
I must respectfully join Mr. Justice BARHAM's dissent.
Our state constitution unambiguously provides that "cases in which the punishment may be capital" "shall be tried" "by a jury of twelve, all of whom must concur to render a verdict." Art. VII, Section 41, La.Constitution of 1921 (Italics mine). The unambiguous meaning of "capital punishment" is the death penalty, as my brother's scholarly dissent shows.
In Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), a majority of the United States Supreme Court held that, under statutory schemes similar to that applicable in the present case (where the jury has unlimited discretion to impose life or death), the death penalty is unconstitutional. In compliance with the Supreme Court decision, this court has recognized that death penalties received under our present statutes must be set aside and the convicted defendant be re-sentenced to life imprisonment. State v. Franklin, 263 La. 344, 268 So.2d 249 (rendered October 26, 1972).
*212 Therefore, under our state constitution since "the punishment may be capital", Art. VII, Section 41, no longer by reason of Furmanthe state is entitled to try this case on the basis that a non-unanimous (9 of 12) verdict may convict, just as in all other non-capital major felonies.[1]
The majority has adopted a position which at first seems attractive and sensible. In effect, the majority sayslet the legislature move in to regulate the chaos in our procedural law resulting from the Furman decision. As much as I would personally prefer to do so, we abdicate our judicial function when we fail to apply present mandatory requirements and restrictions of our state constitution in the hope the legislature may somehow resolve the crisis.
Until the state constitution is changed, any legislative regulation contrary to the present provisions would be invalid. Our duty is to enforce the state and federal constitutions. We fail in such duty when we do not apply unambiguous provisions of our state constitution and, in effect, pretend that Furman was not decided invalidating the death penalty under the statutes upon which the present defendant is tried.
We should likewise note that Furman did not invalidate the death penalty per se only as applied under statutes similar to those here involved. As I read the opinions in Furman, a majority of the United States Supreme Court did not invalidate a mandatory death penalty to be applied under narrowly prescribed circumstances such as intentionally killing a law enforcement officer known to be such and in the performance of his duties. If such a statute is enacted and is valid, then the present constitutional provisions regulating capital cases are applicablethey are not invalidated because of Furman, they simply do not apply to offenses charged under present statutes of our state, since under Furman such offenses are no longer subject to capital punishment.
Constitutions become inconvenient things when a current generation regards as irrelevant considerations which induced a previous one to incorporate in the organic law mandatory requirements or protections of individuals and restraints on governmental action. Conceding that some leeway to accord with contemporary notions is afforded in the judicial interpretation of merely general standards (e. g., "due process of law", every person shall have "adequate remedy . . . administered without. . . unreasonable delay", see La.Constitution, Article I, Section 6), nevertheless, faced with a flat and explicit constitutional command, the courts must enforce it. It is so in this case.
I must therefore respectfully dissent.
NOTES
[1] 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), holding that the imposition and execution of the death penalty, where the jury has the discretion to impose the death sentence or a lesser sentence, violates provisions of the United States Constitution.
[2] cap'i-tal , [F., fr. L. capitalis capital (in senses 1 & 2), fr. caput head. See Chief; cf. Capital, n.]

1. Of or pertaining to the head or top. Obs.
2. Having reference to, or involving the forfeiture of, the head or life; punishable with death; as a capital trial or verdict; specif., in Roman or Civil Law, involving, or punishable by, loss of legal personality.
Many crimes that are capital among us.
 Swift.
To put to death a capital offender.
 Milton.
3. Mortal; of enmity or an enemy, deadly; fatal. Obs.
Merriam-Webster's New International Dictionary of the English Language, Second Edition Unabridged (1950).
[3] "A sentence shall not be set aside on the ground that it inflicts cruel or unusual punishment unless the statute under which it is imposed is found unconstitutional."
[4] Compare C.Cr.P. 933: "Except where the context clearly indicates otherwise, as used in this Code:

"(1) `Offense' includes both a felony and a misdemeanor.
"(2) `Capital offense' means an offense that may be punished by death.
"(3) `Felony' means an offense that may be punished by death or by imprisonment at hard labor.
"(4) `Misdemeanor' means any offense other than a felony, and includes the violation of an ordinance providing a penal sanction."
[1] Similarly, the accused is entitled to bail as in all other non-capital cases, Article I, Section 12, La.Constitution, see State v. Flood, 263 La. 700, 269 So.2d 212, rendered this same date, in which case I dissent also for reasons similar to those here stated. Of course, in fixing bail, the trial court may consider, inter alia, "The seriousness of the offense charged", "The previous criminal record of the defendant", and "Any other circumstances affecting the probability of the defendant's appearance", La.C.Cr.P. Art. 317 (1), (3), and (5), which indicates that, in the serious crimes of violence involving a life sentence if convicted, the trial court may fix the amount of bail sufficiently high to avoid the untoward effects feared, such as in the case of armed robberies presentlywhich, were it not for our state constitution, might reasonably be made non-bailable if quickly tried.